## BOARD OF COMMISSIONERS OF THE COUNTY OF ELK-HART ET AL. *v.* ALBRIGHT ET AL.

[No. 21,024.   Filed June 4, 1907.]

1. CONSTITUTIONAL LAW. — *Statutes.—Title.—Subject-Matter.—* Under the constitutional provision (Art. 4, §19), providing that "every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title," it is the subject, and not the matters connected therewith, that must be expressed in the title.   p. 568.

2. SAME.—*Statutes.—Title.—Subject.—How Expressed.*—Under the constitutional provision (Art. 4, §19), providing that the subject of an act must be expressed in the title, it is sufficient if the subject be stated expressly, or if it be inferable from the details stated.   p. 568.

3. SAME.—*Statutes.—Title.—Subject.—Courts.*—The act of 1907 (Acts 1907, p. 7), creating superior courts in the counties of Elkhart and St. Joseph, does not violate the constitutional provision (Art. 4, §19), providing that the title shall embrace but one subject which shall be stated therein, although it states some of the details of the procedure of such courts, such details being embraced in the one subject.   p. 569.

4. SAME. — *Statutes.—Title.—Purview.—Interpretation.*—In the interpretation of the title of a statute, courts may look to the purview; and in interpreting the purview, courts may look to the title.   p. 569.

5. SAME.—*Statutes.—Title.—Delusive.—Courts.—Creation of.—* The title of the act of 1907 (Acts 1907, p. 7), creating superior courts for the counties of Elkhart and St. Joseph, is not false

and delusive in violation of the constitutional provision (Art. 4, §19), requiring each act to have but one subject, and that such subject be expressed in the title, on the ground that such courts will have practically the same jurisdiction as the circuit courts in such counties. p. 569.

6. CONSTITUTIONAL LAW. — *Statutes.* — *Title.—Interpretation.*— The title to a statute will be interpreted so as to cover the purview, if the words used are capable of such interpretation under any meaning which they will bear. p. 569.

·7. SAME.—*"Other" Courts.—Creation of.—Words and Phrases.*— The Constitution (Art. 7, §1), providing that "the judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may etsablish," does not exclude the power to create courts having the same jurisdiction as the circuit courts, the word "other" meaning similar in kind as well as different, depending upon the particular context. pp. 570, 574.

8. SAME.—*Circuit Courts.—Jurisdiction.*—Under the constitutional provision (Art. 7, §8), providing that the circuit courts "shall have such civil and criminal jurisdiction as may be prescribed by law," the legislature may define the jurisdiction of such circuit courts. p. 572.

9. SAME. — *Courts.* — *Kinds.* — *Jurisdiction.* — Under the Constitution (Art. 7, §1), giving the legislature the power to create "other" courts than the circuit courts, the legislature may create civil courts with the same civil jurisdiction as such circuit courts, and criminal courts with the same criminal jurisdiction as such circuit courts. p. 574.

10. SAME.—*Courts.—Supreme.*—The Constitution (Art. 7, §1), providing that "the judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may establish," gives no authority to the legislature to create "other" courts of the same jurisdiction as the Supreme Court, since, in such case, the Supreme Court would not be "supreme." p. 574.

11. SAME.—*Statutes.—Prosecuting Attorneys.—Imposing Additional Duties Upon.*—The act of 1907 (Acts 1907, p. 7), creating superior courts in the counties of Elkhart and St. Joseph, is not unconstitutional on the ground that it requires the prosecuting attorney for the district composed of the counties of Elkhart and Lagrange to prosecute for the State in the created Elkhart Superior Court, even though such prosecuting attorney may be a resident of Lagrange county. p. 575.

12. OFFICERS. — *State.* — *County.* — *Prosecuting Attorney.* — The prosecuting attorney is a state and not a county officer. p. 575.

13. CONSTITUTIONAL LAW. — *Creation of Superior Courts.* — *Increasing Salaries of Sheriffs and Clerks.*—The act of 1907 (Acts 1907, p. 7), creating superior courts in Elkhart and St. Joseph counties, is not unconstitutional on the ground that it increases the salaries of the sheriffs and clerks of such counties, since it must be presumed that the increase was because of additional work required of such officers.   p. 575.

14. SAME.—*Fees and Salaries.—Special Acts.*—Salaries of county officers may be provided by a special act.   p. 575.

15. SAME.—*Creation of Superior Courts.—Salaries of Judges.*—The act of 1907 (Acts 1907, p. 7), creating superior courts in the counties of Elkhart and St. Joseph, is not unconstitutional on the ground that the salary provided for the judge thereof shall not be less than the amount paid to the judge of the St. Joseph Circuit Court, it being the duty of the legislature to readjust the salaries when conditions change.   p. 576.

16. SAME.—*Creation of Superior Courts.—County Business.*—The act of 1907 (Acts 1907, p. 7), creating superior courts in the counties of Elkhart and St. Joseph and requiring the boards of commissioners to provide the necessaries therefor, is not in conflict with the constitutional provision (Art. 4, §22), inhibiting the passage of a special act "regulating county and township business," since the Constitution (Art. 7, §1), permits the creation of a court by special act, and the housing of such court is a necessary incident to its creation.   p. 576.

17. COURTS.—*Inherent Powers.—Necessaries.*—Courts of general jurisdiction have the inherent right to cause to be provided the things essential to the proper carrying out of their duties. p. 577.

18. CONSTITUTIONAL LAW. — *Statutes.* — *Special.* — *Courts.* — *Changes of Venue.* — The third proviso of section eleven of the act of 1907 (Acts 1907, p. 7), providing for changes of venue from and to the circuit and superior courts in Elkhart and St. Joseph counties, is unconstitutional as special legislation.   p. 578.

19. SAME.—*Statutes.—Valid in Part.—Divisibility.*—That a portion of an act is unconstitutional will not destroy the remainder thereof, if enough remains to be intelligently acted upon, and if the courts think the legislature would have passed it regardless of the invalid part.   p. 579.

20. SAME. — *Statutes.* — *Partly Invalid.* — *Courts.* — *Changes of Venue.*—The act of 1907 (Acts 1907, p. 7), creating superior courts in Elkhart and St. Joseph counties and providing for

changes of venue in such courts, is divisible, the provisions for changes of venue having no necessary .connection with the remainder of the act. p. 580.

21. CONSTITUTIONAL LAW. — *Statutes.* — *Divisibility.* — *Courts.*— *Appeals.*—The act of 1907 (Acts 1907, p. 7), creating superior courts in Elkhart and St. Joseph counties and providing for appeals to the Elkhart Superior Court, may be sustained, even though such provision for appeals be unconstitutional as special legislation, the act being divisible. p. 581.

From Elkhart Circuit Court; *James S. Dodge,* Judge.

Suit by Eli M. Albright and others against the Board of Commissioners of the County of Elkhart and others. From a decree for plaintiffs, defendants appeal. *Reversed.*

*J. B. Gattshall, Elisha A. Baker, James L. Harman, William B. Hille, James H. State, Perry L. Turner* and *J. M. Van Fleet,* for appellants.

*Miller, Drake & Hubbell, Elias D. Salsbury* and *Lou W. Vail,* for appellees.

GILLETT, J.—Suit by appellees, as taxpayers, to enjoin the making of expenditures for the maintenance of the Elkhart Superior Court. .There was a decree in favor of appellees. The matter is before us on a special finding, but it is unnecessary to go into the facts, as the whole controversy relates to the validity of the act of January 31, 1907 (Acts 1907, p. 7), by which a superior court district, composed of the counties of Elkhart and St. Joseph, was sought to be created. The first question is as to the sufficiency of the title to said act. It is as follows:

"An act entitled an act to establish superior courts in the counties of Elkhart and St. Joseph, to be presided over by one judge, to define the authority and jurisdiction of said courts, to provide for the appointment, election, commission and compensation of the judge thereof, for clerk and sheriff and compensation of the same, for the practice and procedure in said courts, for changes of venue from the judge thereof or from the county and the transfer of causes on account thereof to other courts and for changes of

venue from judges of circuit courts or other courts and the transfer of causes to said superior courts, for the time and place of holding said courts, and declaring an emergency."

Article 4, §19, of the Constitution, provides: "Every act shall embrace but one subject and matters properly connected therewith; which subject shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." It is the subject, and not the matters connected therewith, which is required to be set forth in the title, and a very general statement of the character of an act may be quite sufficient to call attention to the nature of the enactment. Thus the title, "an act to authorize the formation of new counties," was held sufficient to authorize a provision for the organization and sitting of courts in the counties created by said act as a part of the internal furnishings of such political corporations. *Brandon* v. *State* (1861), 16 Ind. 197. Here the title not only indicates that the act is to establish superior courts in said counties, but that which follows tends still further to make for certainty and to challenge inquiry upon the part of all. It is quite permissible to use the details of a title, where available, to grasp the general subject to which an act relates. *Maule Coal Co.* v. *Partenheimer* (1900), 155 Ind. 100; *Isenhour* v. *State* (1901), 157 Ind. 517, 87 Am. St. 228. A standard text-book states: "The subject of an act may be expressed generally in the title, or spelled out from details, and occasionally from details which are independent and unconnected except through some general subject as cousins german are related through a common ancestor. According to the authorities the general subject need not appear in the title, if it is clearly disclosed or readily inferred from the details expressed." 1 Lewis's Sutherland, Stat. Constr. (2d ed.), §134.

There is no merit in the contention that the act relates to more than one subject. It is true that there is more than one subsidiary subject mentioned in the act, but there is no difficulty in "spelling out" from the title, taken as a whole, a single general subject. This becomes still clearer when the title is read in the light of the act. As was said in *Western Union Tel. Co.* v. *Braxtan* (1905), 165 Ind. 165, 168: "In the interpretation of the title we must look to the body of the act, and in construing the body we must look to the title; and if it appears from both that all the provisions of the act are fairly referable to one general subject, and that subject is clearly expressed in the title, the act is valid, though there may be more than the general subject expressed therein."

We do not find ourselves impressed with the claim that the title is false and delusive, in that, while it purports to be an act creating superior courts, it is in reality an act creating courts with the same jurisdiction as the circuit courts of the counties within the district. The title itself directly states that the authority and jurisdiction of said courts are fixed in the act, and this was itself a challenge to examine its provisions. It cannot be said that a so-called superior court in this State has any fixed measure of jurisdiction. Indeed, at the time of the passage of this act, there had for a number of years existed superior courts in the counties of Lake, Porter and Laporte, with practically the same jurisdiction as was attempted to be vested in the courts in question. The contention under consideration is fully met by *Hargis* v. *Board, etc.* (1905), 165 Ind. 194, wherein we said: "The title of an act is to receive a liberal construction if necessary to sustain the legislative intent. If the words used in a title, taken in any sense or meaning they will bear, are sufficient to cover the provisions of the act, the act will be sustained even though such meaning may not be the most

common meaning of such words. * * * 'The courts will not resort to a critical construction of the title in order to hold a statute unconstitutional. On the contrary the langauge of the title is in all cases given a liberal interpretation, and the largest scope accorded the words employed that reason will permit in order to bring within the purview of the title all the provisions of the act.' 26 Am. and Eng. Ency. Law (2d ed.), 583."

The principal contention of counsel for appellees is that it is incompetent for the General Assembly to create a superior court having the same quantum of jurisdiction as that which is possessed by the circuit court. The Constitution (Art. 7, §1) provides: "The judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such other courts as the General Assembly may establish." Prior to the amendment of 1881 the word "inferior" was used in said section where the word "other" occurs. It is asserted that the latter word is used in the Constitution more than twenty times, and that in every other instance it is used as meaning "different from the subject previously mentioned." From this it is argued that the word must have the same meaning in the section we are considering. Assuming that this proposition has for its basis a rule of construction, the statement of it would require limitations beyond those which the contention implies. As applying to words which constitute the subsidiary coinage of literary use, we should regard it as a serious mistake, even in construing an instrument so carefully framed as a constitution, to assume that they are always used in precisely the same sense, since they are peculiarly liable to be shaded, or even molded, by the particular context in which they are found. It is as to such words that the principle *noscitur a sociis* has particular application. It is pointed out by Vattel that, "words and expressions have a different force, sometimes even a quite different signification, according to the occasion, their

connection, and their relation to other words." Vattel, Law of Nations (7th Am. ed.), *254. See, also, Potter's Dwarris, Statutes, 196. The context is such in the instances where the word "other" is elsewhere used in the Constitution that no light is shed upon the meaning of the word in the section under consideration. Under the *ejusdem generis* rule, which finds its ordinary application where the word "other" is used in introducing unenumerated particulars following specific terms, there is commonly an intendment that the unenumerated particulars are of the same class as the terms specifically mentioned. So, at the least, no violence is done to the word in assuming that the provision of the Constitution is broad enough to authorize the creation of courts like the circuit courts. The court which sits at Elkhart, although it has the same jurisdiction as the circuit court at Goshen, is, nevertheless, another court. Indeed, it would seem, unless there is something evincing a design to give to the circuit court a particular and unique jurisdiction, which it is inadmissible to parallel from its beginning to its end, that it would be enough to distinguish the two courts that one is a court presided over by a judge who holds for six years, while the other court has a judge whose term cannot, under the Constitution, exceed four years.

In *Commonwealth, ex rel., v. Hipple* (1871), 69 Pa. St. 9, it was held that, under a provision of the Pennsylvania constitution authorizing the creation of "other courts," it was competent to establish criminal courts having concurrent jurisdiction with criminal courts existing under the constitution, the court saying: "The constitution having neither defined nor limited the jurisdiction of the courts named in the constitution, or of those to be afterwards established, the power to create new courts and new law judges carried with it the power to invest them with such jurisdictions as appear to be necessary and proper, and to part and

divide the judicial powers of the state so as to adapt them
to its growth and change of circumstances."

When the Constitution of this State required that such
courts as might be created should be "inferior" to the cir-
cuit courts, their relative rank was properly tested by the
extent of their jurisdictions, but, with the word "other"
substituted, it appears to us that no possible constitutional
objection could exist to the creation of a court which shared
with the circuit court its jurisdiction and its power.    As
applied to the case in hand, we may appropriately borrow
the observation of this court, in *Combs* v. *State* (1866), 26
Ind. 98, 99 : "Large communities require more time for the
transaction of judicial business than small ones, and if one
court cannot do the business, there must be more created."

The argument, that there cannot be a court which has
precisely the same measure of jurisdiction as the circuit
court, is evidently built upon the assumption that
under the Constitution the jurisdiction of the cir-
cuit court is a fixed quantity.    The fact that the
clerk of the circuit court was made a constitutional officer
indicates that it was designed that such courts should be
courts of record, and we do not perceive anything in the
amendment of 1881 which is in anywise indicative of a
purpose to put it within the power of the General Assembly
to make them inferior *nisi prius* tribunals.    It may also be
admitted, as contended, that from the fact that judicial
power is vested in such courts by said §1, article 7, certain
implications follow as to the existence of some inherent pow-
ers in such tribunals, such as the authority to pass upon the
constitutionality of statutes, where involved within the pur-
view of their jurisdiction, to enforce obedience to their
mandates, and to protect themselves from contempts.    But
from these admissions it does not follow that the jurisdic-
tion of said courts is a fixed quantity.    The framers of the
Constitution of 1816 saw fit to give some specific guaranty
to said courts, since it was provided that "The president

and associate judges, in their respective counties, shall have common law and chancery jurisdiction, as also complete criminal jurisdiction, in all such cases, and in such manner as may be prescribed by law." Const. 1816, Art. 5, §3. The only direct provision, however, which is found in the Constitution of 1851, concerning the jurisdiction of the circuit courts, is that they "shall have such civil and criminal jurisdiction as may be prescribed by law." Const. 1851, Art. 7, §8. This gives to the General Assembly power to fix the extent of their jurisdiction. *Board, etc., v. Gwin* (1894), 136 Ind. 562, 22 L. R. A. 402; Brown, Jurisdiction (2d ed.), §14. No question of making said courts inferior to the highest *nisi prius* courts is here involved. When an attempt is made, by the narrowing of their jurisdiction, to put them in the category of inferior courts, it will be time enough to vindicate their right. The hope of constitutional government for the future does not require that the legislative power should in all cases be bound down by iron bands.

The existence of the power to fix the jurisdiction of the circuit courts has the sanction of the earliest practice. With the first session of the General Assembly after the adoption of the Constitution the common pleas court was created and given jurisdiction which in some respects encroached upon the jurisdiction which the circuit court had exercised for a considerable time prior thereto, and it is also worthy of remark that under the legislation of that session the two courts were given concurrent jurisdiction as respects certain actions. 2 R. S. 1852, pp. 5, 16. More than that, before the Constitution was amended this court steadily upheld the power of the General Assembly to create criminal and superior courts with some or the greater part of the powers of the circuit courts. *Combs v. State, supra; Anderson v. State* (1867), 28 Ind. 22; *Clem v. State* (1870), 33 Ind. 418; *Vickery v. Chase* (1875), 50

Ind. 461; *Guetig* v. *State* (1879), 66 Ind. 94, 32 Am. Rep. 99; *Smith* v. *Smith* (1881), 77 Ind. 80.

There could be no doubt, we assume, of the authority to create a court with all of the jurisdiction of the circuit court except as to criminal cases, and at the same time to create another court in the same county with concurrent jurisdiction with the circuit court in respect to crimes, so that one or the other of these additional courts would be capable of entertaining jurisdiction of any matter over which the circuit court might assume jurisdiction. As this may be done, and as the jurisdiction of the circuit court may at all times be increased or diminished, it would seem passing strange, with the restriction removed, that other courts must be "inferior," if the General Assembly, in the exercise of its authority, might not create another court and give to it the same measure of jurisdiction that, by the fortuitous circumstance as to the then state of legislation, the circuit court happened to have.

The views above expressed afford no sanction for the idea that a court might be created with the same jurisdiction as the Supreme Court. So far as this court is concerned, the creation of "a Supreme Court" gives to it its own place at the head of the judicial system. There cannot be a court of coördinate jurisdiction with this court, for otherwise it would not be supreme. But one supreme court was established or contemplated. *Branson* v. *Studabaker* (1892), 133 Ind. 147.

Since counsel for appellee have sought a reëxamination of the question as to the power to create another court with the same jurisdiction as the circuit court, we have not as yet adverted to the holding of this court concerning the Lake, Porter and Laporte superior courts, but it remains to be said that in *Swartz* v. *Board, etc.* (1902), 158 Ind. 141, this court, following the view expressed in *Woods* v. *McCay* (1896), 144 Ind. 316, 33 L. R. A. 97, decided that additional courts might be cre-

ated having in all respects concurrent jurisdiction with the circuit courts. A reëxamination of the question has not led to a modification of our views as expressed in the case of *Swartz* v. *Board, etc., supra.*

It is contended that the act is unconstitutional because the prosecuting attorney of the circuit composed of the counties of Elkhart and Lagrange is made *ex officio* the prosecutor of the Elkhart Superior Court. We are not advised of any reason which would render it inadmissible to require the prosecuting attorney of the circuit court to prosecute the pleas of the State in all of the courts of his district. It is a matter of long usage for him to prosecute criminal cases before justices of the peace. There is no more reason for the contention that additional duties cannot be laid upon the prosecuting attorney than there would be for the view that the clerk of the circuit court might not have other duties imposed upon him. It is true, as suggested, that the prosecutor may at some time be a resident of Lagrange county, but it would seem to be a sufficient answer to this objection that he is not a county officer. *State, ex rel.,* v. *Tucker* (1874), 46 Ind. 355. In any event, there is nothing in the facts pleaded with reference to the prosecuting attorney to prevent the act from having a present operation as designed.

We are of opinion that the act is not invalid because it gives extra compensation to the sheriff and clerk on account of the additional duties imposed upon them. It is admissible to create a court by special act, and the General Assembly is empowered, by virtue of its authority to grade the compensation of officers in proportion to population and the necessary services required, to determine the compensation of the officers of the court. The salary act of 1895 is but a series of local provisions concerning the compensation of the officers therein named, and it must at this time be regarded as settled by our cases that there is no objection that

the legislature, by special act, fixes the salary of a county officer, since it will be presumed that this is done as an adjustment of the general scale. *State, ex rel.,* v. *Boice* (1895), 140 Ind. 506; *Legler* v. *Paine* (1897), 147 Ind. 181; *Harmon* v. *Board, etc.* (1899), 153 Ind. 68; *Swartz* v. *Board, etc., supra; Board, etc.,* v. *Lindeman* (1905), 165 Ind. 186. The provisions concerning the clerk and sheriff are not open to the objection that they authorize the holding of two lucrative offices. *State, ex rel.,* v. *Harrison* (1888), 116 Ind. 300. And see *Seiler* v. *State, ex rel.* (1903), 160 Ind. 605.

We perceive no objection to the proviso that the salary of the judge of the superior court district shall not be less than the sum paid the judge of the St. Joseph Circuit Court. This is but a negative provision, and would not prevent the superior judge from receiving more under the first part of the section. And in any event it must be presumed that the legislative judgment as to the services required prompted the making of the provision for compensation which is found in the act. When conditions render the compensation of officers unequal, it is for the lawmaking power to make a readjustment. *Harmon* v. *Board, etc., supra.* Indeed, it may be observed in passing, that since the enactment of the act in question the legislature has passed a general law upon the subject. Acts 1907, p. 182.

It is contended that the requirement of section nineteen (Acts 1907, p. 7) concerning the duty of the commissioners to furnish a place for the holding of court, amounts to an attempted regulation of county business in violation of §22, article 4, of the Constitution. It has been many times decided that under §1, article 7, of the Constitution the legislature has power to create other courts by special act, and, while we are by no means to be understood as affirming that the General Assembly, in the exercise of a particular grant of power, may violate a pro-

hibition of the Constitution which is found in some other section, yet we regard it as settled that essential incidents of the grant belong with the principal power. *State, ex rel., v. Kolsem* (1892), 130 Ind. 434, 14 L. R. A. 566; *Woods v. McCay* (1896), 144 Ind. 316, 33 L. R. A. 97; *Board, etc., v. State, ex rel.* (1897), 147 Ind. 476; *Swartz v. Board, etc., supra.* Under §1, article 7, it is for the legislature to determine what "other" courts it will create, and as it enjoys this power, unhampered by section twenty-two of the legislative article, it need not enact a general law, under which courts might spring into existence where not needed, but can ordain the existence of a court in a particular county, and, that its arm may not be shortened in the consummation of its undoubted power, the authority must be accorded to the legislature to annex necessary incidents, such as provisions for the housing of the court, for the procuring of records, etc. The act in question is to be broadly distinguished from *Board, etc., v. State, ex rel.* (1904), 161 Ind. 616, for this act is imperative only as to what is essential, and all questions as to what constitutes "a suitable and convenient place" are left to the board. Besides, a controlling usage has grown up in this State in support of the power of commissioners to provide suitable quarters for the more important courts which the legislature has created. See *Board, etc., v. Bunting* (1887), 111 Ind. 143. But, if it were granted that the section in question is unconstitutional, the act would still stand.

17. Although created by legislative fiat, the courts in question nevertheless deraign their title from the Constitution, and since they enjoy, with the courts enumerated in the Constitution, that measure of inherent power which is essential to enable them to protect themselves, we have no doubt that in the absence of other authority such courts could require what is absolutely essential to be provided. *Board, etc., v. Stout* (1893), 136 Ind. 53, 22 L. R. A. 398. And see *State, ex rel., v. Noble*

(1889), 118 Ind. 350, 4 L. R. A. 101, 10 Am. St. 103. As
said in *Board, etc., v. Stout, supra:* "Courts are an in-
tegral part of the government, and entirely independent;
deriving their powers directly from the Constitution, in so
far as such powers are not inherent in the very nature of
the judiciary. A court of general jurisdiction, whether
named in the Constitution or established in pursuance of
the provisions of the Constitution, cannot be directed, con-
trolled, or impeded in its functions by any of the other de-
partments of the government. The security of human
rights and the safety of free institutions require the abso-
lute integrity and freedom of action of courts."

Appellees' counsel seek to overthrow the act (Acts 1907,
p. 7) on the ground that section eleven is unconstitutional.
That section is as follows: "Changes of venue
from the judge of said courts or from the county
shall be granted as are now or may hereafter be
provided by law: Provided, that if the judge of said court
shall deem himself incompetent to sit in any cause he may
decline to sit and appoint a special judge to try said cause
with the same effect and in the same manner as if a change
of venue had been taken from said judge: And provided
further, that changes of venue may be had from circuit or
superior courts to the superior courts hereby created, and
from the superior courts so created to any circuit or su-
perior court having jurisdiction of the subject-matter of
the cause of action, in the same manner that changes of
venue are now provided for, from and to the circuit courts
of the State, and, provided further, that if a change of
venue is had from the judge of either the circuit or superior
court of said Elkhart or St. Joseph county in any cause,
such cause may and in case all parties appearing therein
agree shall be sent to the circuit or superior court of said
county, as the case may be, and the original papers in such
causes shall be transferred from one court to the other; no
transcript being necessary and the court to which said

cause is so transferred shall have full jurisdiction thereof." It would be difficult to avoid the conclusion that the third proviso of said act is in violation of at least one of the prohibitions of the Constitution against local or special legislation, but the whole enactment does not depend upon such proviso. A statute may be unconstitutional in part without impairing the validity of what remains. *Clark* v. *Ellis* (1826), 2 Blackf. 8; *Ingerman* v. *Noblesville Tp.* (1883), 90 Ind. 393; *Taggart* v. *Claypool* (1896), 145 Ind. 590, 32 L. R. A. 586. As was said in *Clark* v. *Ellis, supra:* "That part which is unconstitutional, is considered as if stricken from the act; and if enough remains to be intelligently acted upon, it is considered as the law of the land." It is true that in many instances the portion which it is sought to excise may bear such relation to the enactment that the court cannot say that the legislature would have passed the act in the form in which it must leave the court's hands. Difficulty may also arise in the attempt to eliminate the objectionable provision, owing to the fact that such matter may bear such relation to what remains as materially to affect the meaning of the valid portion of the statute. In the case in hand we are not embarrassed by the difficulties suggested.

It was pointed out by Chief Justice Waite in *Allen* v. *City of Louisiana* (1880), 103 U. S. 80, 26 L. Ed. 318, that much must depend upon the general scope of the act in determining whether the intent may be carried out. Every case involving the question of enforcing a partial enactment is in a measure peculiar to itself, but the fact is worthy of attention that there are a number of cases upholding the validity of acts creating courts where some minor provisions as to the extent of their jurisdiction were invalid. *Stier* v. *Koster* (1901), 66 N. J. L. 155, 48 Atl. 790; *Reid* v. *Morton* (1886), 119 Ill. 118, 6 N. E. 414; *Lorentz* v. *Alexander* (1891), 87 Ga. 444, 13 S. E. 632; *Lytle* v. *Halff* (1889), 75 Tex. 128, 12 S. W. 610; *St.*

*Louis, etc., R. Co.* v. *Hall* (1905), 98 Tex. 480, 85 S. W. 786. And see *Curtin* v. *Barton* (1893), 139 N. Y. 505, 34 N. E. 1093; *People, ex rel.,* v. *Kenney* (1884), 96 N. Y. 294. Several of the cases cited involve the creation of local courts by special legislation. In *Lorentz* v. *Alexander, supra,* the supreme court of Georgia said: "The fact that the special act gives more, or less jurisdiction, and establishes its proceedings and practice, does not render the whole act unconstitutional. So far as the act established a circuit court and ordained jurisdiction, powers, proceedings and practice in conformity to the general law, it was constitutional, and the court thus established must be governed by the act making the practice uniform in all county courts." We think that it should be assumed, in view of the relative importance of the main project, that the provision concerning the sending of causes from one court to the other was not an essential part of the general plan.

It is also our conclusion that the matter embraced in said third proviso has no vital connection with the remainder of the section. Mr. Bishop goes so far as to state that "absolute independence of the provisions is not a prerequisite to letting a part stand while the rest fall." Bishop, Written Laws, §34. The opening sentences of section eleven, as well as section sixteen, disclose the predominate purpose of the legislature not to interfere in any prohibited degree with the established rules of practice. Even laws which may hereafter be passed concerning changes from the judge are, by words of adoption, made a part of the act, while in the proviso in question the court is not, in the first instance, peremptorily directed to send the cause to the other court, as might have been expected had that been regarded as fundamental, but it is simply provided that the court "may" so order. The more imperative language which follows, relative to the duty of the court to transfer the cause where the parties

agree thereto, may be explained on the theory that the legislature was prompted so to provide in order to accommodate the parties. We are of opinion that the legislature was not seeking by the proviso to break down a rule of practice, but merely to extend to litigants an advantage which might add to their convenience. It appears to us, conceding the alleged unconstitutionality of said proviso, that we can reach the legislative intent on ordinary principles governing the construction of statutes, and that therefore we should merely disregard the excess of authority, thereby carrying out the maxim, of general application in construing written instruments, *ut res magis valeat quam pereat.* *Adler* v. *Whitbeck* (1886), 44 Ohio St. 539, 575, 9 N. E. 672; *Hatcher* v. *Rocheleau* (1858), 18 N. Y. 86; Anderson's Law Dict., title, unconstitutional.

The act is further assailed because of the provision purporting to give to the Elkhart Superior Court exclusive jurisdiction of appeals from inferior tribunals in certain townships. In view, however, of what we have already said, it will be perceived that the provision in question may be eliminated from the act, if need be. With two courts of concurrent jurisdiction over such appeals, there is not the slightest reason for the supposition that the legislature would not have passed the act but for the existence of such provision.

One or two further details of the act are questioned, but, in view of what has already been said, we may pass them by with the general statement that it appears to us that appellees have no standing to enjoin the proposed expenditures.

Judgment reversed, with directions to the court below to restate its conclusions of law in conformity with this opinion, and to enter judgment in favor of appellants.