STATE EX REL. GANNON *v.* LAKE CIRCUIT COURT ET AL.

[No. 28,093.   Filed May 21, 1945.]

*Gavit & Richardson,* of Gary, for relator.

*George E. Hershman* and *Ray C. Hedman,* both of Crown Point, and *Victor K. Roberts,* of Lowell, for respondents.

RICHMAN, J.—Relator was appointed Judge of the Juvenile Court of Lake County pursuant to an act creat-

ing the court, approved March 9, 1945, which will be ch. 347 of the Acts of 1945 when published. It gives to the new court exclusive jurisdiction of juvenile and related cases formerly within the jurisdiction of respondent court. We issued a temporary writ of prohibition against respondents from exercising any jurisdiction attempted to be conferred by the act upon relator or the court of which he is judge, and enjoining them from interfering with the exercise of the duties and functions of said court. Respondents' return asserts that the act is unconstitutional. Otherwise no defense is suggested except that such a writ may not run against individuals. To this we accede as will appear by the mandate herein. Respondents concede that in their official capacities they are proper parties. A writ directed against the Lake Circuit Court would bind its officers so they are not necessary parties, but in the absence of such concession there would be no harm in including them. *State ex rel. Spencer* v. *Criminal Court, Marion County* (1938), 214 Ind. 551, 16 N. E. (2d) 888.

"To prevent the encroachment by one (court) on the jurisdiction of the other is within the legal scope of a writ of prohibition . . . ." *State ex rel. Cook* v. *Madison Circuit Court* (1923), 193 Ind. 20, 138 N. E. 762, citing *State ex rel. Harkness* v. *Gleason, Judge* (1918), 187 Ind. 297, 119 N. E. 9, wherein the court says:

"The legislative act conferring original jurisdiction on this court to issue writs of prohibition to certain inferior courts named therein to confine such courts to their respective lawful jurisdiction does not extend or enlarge the scope of the writ of prohibition as it was known and recognized at common law. . . . . The power of superintending control will not be exercised in the place of appellate jurisdiction or where another remedy exists. . . .

It is not the policy of courts to exercise such power on slight occasion, but only in special emergency cases to prevent great impending present injury."

See also 42 Am. Jur., *Prohibition*, § 5 and note in 77 A. L. R. 245.

It would seem to follow that the issues in such a proceeding should be narrowly drawn. Accordingly we shall confine our inquiry herein to the jurisdictional dispute. If the legislature violated no constitutional provision in creating the Juvenile Court of Lake County and endowing it with exclusive jurisdiction as defined in § 3 of the act, and if relator is its present judge, the respondent court may be prohibited from exercising such jurisdiction.

The title is as follows:

"AN ACT providing for juvenile courts defining their powers and jurisdiction, providing for the appointment of probation officers, referees and other employees outlining their duties and authorities and specifying their compensation; providing for procedure in such courts including time and place of trial, providing for keeping records of such courts, the appointment of officers for same, fixing the term and salary of judges, the manner of election, the payment of salaries, the transfer of cases to such courts, conferring juvenile jurisdiction in certain counties in circuit and superior courts, making an appropriation, and repealing of laws or parts of laws in conflict therewith, and declaring an emergency."

The first section, applicable to counties with 250,000 or more inhabitants (Lake and Marion), creates "a special court to be known as the juvenile court," to have an elective judge with a four year term, the first election to be in 1948, his term to begin January 1, 1949. The interim vacancy (in Lake County) is to be filled by appointment of the governor. Relator claims under

such appointment which is not questioned except upon the constitutional grounds hereinafter considered.

Sections 2, 3 and 12 are as follows:

"Section 2. In all other counties the circuit court and the judge thereof shall have and possess all the powers and shall perform the duties by law conferred on the juvenile court and the judge thereof."

"Section 3. The juvenile courts created by this Act shall have original exclusive jurisdiction except when specifically waived by the court in such cases as provided by law in all cases of delinquent, dependent and neglected children as defined by law and shall have exclusive original jurisdiction to determine the paternity of any child born out of wedlock and to provide for the support and disposition of such child and in all other cases that may hereafter be conferred by law."

"Section 12. That in counties where superior courts are established by law and are located in cities other than the county seat, except counties in which the judge of a court having juvenile jurisdiction is authorized by this Act to appoint a juvenile referee, such superior court and the judge thereof shall have concurrent jurisdiction with the circuit court and the judge thereof as provided by Section 2 of this Act and shall appoint one (1) probation officer which probation officer shall be paid compensation as provided for in this Act.

"Any circuit or superior court when in session under the provisions of this Act, shall for convenience, be known as the 'Juvenile Court,' and such court may hold sessions irrespective of the terms of the circuit court or such superior court."

There is a separability section, § 25, directing the saving of the remainder of the act if part is declared unconstitutional. Section 26 expressly excepts from the provisions of the act Vanderburgh County with its Probate Court established by ch. 99, Acts of 1919, under which that court has juvenile jurisdiction. Chapter 260, Acts of 1933, creating the State Probation Commission, is declared by § 27 to remain in full force. Other incon-

sistent laws are repealed. The last section contains an emergency clause making the act effective April 1, 1945.

The act does not violate Art. 4, § 19, requiring that "Every act shall embrace but one subject and matters properly connected therewith." This is settled by the able opinion of Gillett, J. in *Board, etc.* v. *Albright* (1907), 168 Ind. 564, 81 N. E. 578, where similar contention was made with respect to the statute creating the Superior Court district of the Counties of Elkhart and St. Joseph. As we read the present act "there is no difficulty in 'spelling out' from the title, taken as a whole, a single general subject," namely, juvenile courts or a juvenile court system. As said by Judge Gillett: "This becomes still clearer when the title is read in the light of the act." The purpose is accomplished by creating special courts in the two largest counties and conferring upon circuit courts of the other counties juvenile jurisdiction. When such a court is exercising such jurisdiction it is to be known as a "Juvenile Court." § 12.

Respondents say that §§ 22 and 23 of Art. 4 are violated in that the act is local and special and seeks to regulate "practice in courts of justice" by singling out the Lake and Marion Circuit Courts and removing jurisdiction in juvenile, delinquency and paternity cases from them to a juvenile court while leaving such jurisdiction in all other circuit courts in the state. They say "the jurisdiction of Circuit Courts throughout the State must be uniform."

Even were the act local and special the constitutional provisions would not apply. *Woods* v. *McCay, Treasurer* (1895), 144 Ind. 316, 43 N. E. 269; *Board, etc.* v. *Albright, supra.* However, we regard the act as a general law. It is of uniform operation in the state and in the same category as many valid laws classifying cities

or counties for purposes of local government. Until a county has a population of 250,000 juvenile jurisdiction is given to and remains in its circuit court, and in the superior court of certain counties. See § 12. When a county attains by the last preceding census a population of 250,000 it will have a special juvenile court on the same terms as those in Lake and Marion County. See *Wayne Township* v. *Brown* (1933), 205 Ind. 437, 461, 186 N. E. 841, 850. There is nothing in the act that purports to prescribe one kind of practice for the special juvenile courts and another for the circuit courts exercising juvenile jurisdiction. While there are procedural provisions different from the code of civil practice yet they are applicable to all courts exercising juvenile jurisdiction, such as section 13, which permits all hearings to be held in chambers and empowers the court to exclude from hearings persons who in his opinion are not necessary for the hearing. By section 8, juvenile courts are given power to adopt rules but it is required that they shall be in conformity with those prescribed by the Supreme Court on the same subject. We understand that it is the prerogative of any court to promulgate reasonable rules, with safeguards as above, that will facilitate the business of the court.

Respondents rely upon *Heckler* v. *Conter* (1933), 206 Ind. 376, 187 N. E. 878, and *Ettinger* v. *Studevent* (1941), 219 Ind. 406, 38 N. E. (2d) 1000. The former held that the legislature had made an arbitrary and capricious classification in a statute "abolishing the office of city treasurer in all second and fourth class cities located in a county having a population of not less than two hundred fifty thousand nor more than four hundred thousand." The latter held, among other things, that classification of cities by population for the purpose of fixing different times for holding city elections was like-

wise capricious. That is not true in the case at bar. Long ago in *Combs* v. *The State* (1866), 26 Ind. 98, sustaining the validity of an act creating a separate criminal court in Marion County and giving it original exclusive criminal jurisdiction (saving justices of the peace courts), this court said:

> "Large communities require more time for the transaction of judicial business than small ones, and if one court cannot do the business, there must be more created. And it is idle to say that the legislature cannot provide for such an exigency. It would be as absurd to say that the legislature could not create courts sufficient for the transaction. of the judicial business of the populous counties of the State, as to say that that body could not give more time for the terms of the courts for one county than another."

See also *Millers Natl. Ins. Co.* v. *American State Bank* (1934), 206 Ind. 511, 518, 190 N. E. 433, 436; *Woods* v. *McCay, Treasurer, supra.* It is well known that the problems of juvenile delinquency are more numerous and more complex in thickly populated communities than in the country, towns and smaller cities. There is accordingly a clear, rational relationship between the size of a community and the need for additional juvenile court facilities.

Next it is asserted that the act contravenes §§ 1, 8 and 9 of Art. 7 in two respects: (1) that it makes Lake Circuit Court a court of inferior jurisdiction to the other circuit courts of the state and (2) that it takes away "inherent power, function and jurisdiction of the Lake Circuit Court." Section 9 is irrelevant. The other sections read as follows:

> § 1. "The judicial power of the State shall be vested in a Supreme Court, in Circuit Courts and such other courts as the General Assembly may establish."

§ 8. "The Circuit Courts shall each consist of one Judge, and shall have such civil and criminal jurisdiction as may be prescribed by law."

Neither section requires that every circuit court in the state shall have the same jurisdiction as every other circuit court. The words "may be prescribed by law" mean that jurisdiction is subject to legislative control. We would not hold that the legislature could take all jurisdiction from circuit courts, making of them mere empty shells [See *State ex rel. Wadsworth* v. *Wright* (1937), 211 Ind. 41, 5 N. E. (2d) 504], but we can see no valid objection to removal of certain types of cases to courts peculiarly constituted for their determination. Juvenile cases have long been thought to require special treatment. Most of the problems they present are social rather than legal. Many circuit judges would gladly relinquish these and kindred responsibilities, such as the trial of paternity cases, involving provision for illegitimate children, which may readily be handled in connection with other juvenile problems. Until it was taken away by ch. 112, Acts of 1941, original jurisdiction of bastardy cases was in justice of the peace courts and even in mayors' courts. *Evans* v. *State ex rel. Freeman* (1905), 165 Ind. 369, 74 N. E. 244, 75 N. E. 651, 2 L. R. A. (N. S.) 619. There is nothing peculiar about such a proceeding that makes the circuit court the only proper forum.

Respondents seem to rely upon *The Board of Comm. of White County* v. *Gwin, Sheriff* (1894), 136 Ind. 562, 36 N. E. 237, for their contention that circuit courts have "inherent jurisdiction" which cannot be taken away by statute. It does not so hold. The court refers therein to inherent powers, existing in courts, such as

the power to punish for contempt. Referring back to the organization of the state it says that "all the common law powers of a court of general jurisdiction . . . are vested in the courts by virtue of their creation." But it does not say that jurisdiction is inherent or permanently vests anywhere. The constitutional provision, Art. 7, § 8, is otherwise.

We do not understand by what process of reasoning respondents reach the conclusion that this act makes the Lake Circuit Court a court of inferior jurisdiction to the other circuit courts of the state. If they refer to the original language of Art. 7, § 1, wherein the word "inferior" was by constitutional amendment in 1881 replaced by the word "other" it is sufficient to say that the amendment took away any force of the original section or the decisions thereunder as to the meaning of "inferior." Ordinarily the word so describing a court is used in the sense that supervision or control over its functions or decisions may be exercised by a higher court. Such was the conception of some members of the constitutional convention. See 2 Debates in Indiana Convention 1850 (Indiana Historical Collections Reprint) p. 1724 *et seq.* That one court has narrower jurisdiction than another does not make it inferior to that other. It has frequently been held that our superior and criminal courts with jurisdiction of fewer types of cases than circuit courts nevertheless have powers coordinate with them so that one may not control by review, injunction or otherwise the procedure or decisions of another. *Scott* v. *Runner, Assignee* (1896), 146 Ind. 12, 44 N. E. 755; *State ex rel. Kunkel* v. *LaPorte Circuit Court* (1936), 209 Ind. 682, 200 N. E. 614; *State ex rel. Seal* v. *Superior Court of Knox County* (1943), 221 Ind. 36, 46 N. E. (2d) 226.

In their reply brief respondents quote from *Board, etc.* v. *Albright, supra,* what they characterize as "the following significant statement:"

"When an attempt is made, by the narrowing of their jurisdiction, to put them in the category of inferior courts, it will be time enough to vindicate their right. The hope of constitutional government for the future does not require that the legislative power should in all cases be bound down by iron bands."

We cannot ascribe much significance to a dictum brushing aside an irrelevant argument. Judge Gillett was not thinking about our problem. The creation of the Elkhart Superior Court no doubt took from the Elkhart Circuit Court a large volume of business, for the act gave the new court at Elkhart full concurrent jurisdiction with the circuit court at Goshen. The effect upon the latter court was perhaps more serious than if the new court had been given only such exclusive jurisdiction as that conferred by the present act. We are more impressed by Judge Gillett's reference to "iron bands" than the first sentence of the quotation. It is conceivable that one by one the various types of cases of which a circuit court has jurisdiction might be taken away to its destruction. There doubtless is a limit to such a process but we are satisfied that the present legislation does not transcend any reasonable limitation of legislative power.

Every superior court in Indiana was created by a separate act. See acts beginning at page 964, Vol. 2 Burns' 1933. Some give the superior court concurrent jurisdiction with the circuit court of all classes of cases but others except juvenile or probate jurisdiction. Criminal courts are created by a general act, § 4-2301, Burns' 1933, § 1744, Baldwin's 1934. The general act under which the Probate Court of Marion County was organ-

ized confers upon said court "original exclusive juris-
diction" not only in probate matters, but partition,
appointment of receivers, habeas corpus and other sub-
jects. § 4-2910, Burns' 1933, § 1786, Baldwin's 1934. The
Vanderburgh Probate Court, organized under ch. 99
of the Acts of 1919, likewise is given original exclusive
jurisdiction of all probate matters and juvenile cases
as specifically set out in §§ 4-3010 and 4-3011, Burns'
1933, § 1811, Baldwins 1934. While probate jurisdiction
was originally in ecclesiastical courts, when the first
Constitution of Indiana was adopted all "judiciary
power" was vested in "one Supreme Court, in Circuit
Courts, and in such inferior courts as the General As-
sembly may from time to time direct and establish."
Art. 5, § 1, Constitution 1816. Exclusive probate and
criminal jurisdiction therefore existed in circuit courts
until others were established. Likewise when the Consti-
tution of 1851 took effect such jurisdiction under Art. 7,
§ 1, had to be in the circuit courts until others were
created. If the word "exclusive" has any significance
whatever, there can be no question that the acts last re-
ferred to remove jurisdiction from the circuit courts and
conferred it upon the new courts in all counties affected
by the acts. We have searched the cases where the con-
stitutional status of these courts was questioned and find
no contention that the removal from a circuit court of
certain jurisdiction theretofore exercised by that court
infringed any constitutional provision. One early case,
*Clem* v. *The State* (1870), 33 Ind. 418, determined that
the Marion Criminal Circuit Court, organized under an
1865 act, was properly constituted. This law gave exclu-
sive criminal jurisdiction to that court. The opinion
states:

> "It matters not that the act defining its jurisdic-
> tion attempts to deprive the Circuit Court of Marion
> County of all criminal jurisdiction, even assuming

that it was not contemplated to circumscribe the jurisdiction of that court within a limit not applied to all the circuit courts. See Acts 1865, Spec. Sess., p. 150, sec. 5. This could not affect the existence of the criminal court in any sense; the worst possible result would be that the Marion Circuit Court still possesses, though not exclusively, its former criminal jurisdiction; and it is not necessary in the present case, to express any further opinion concerning it."

Of this case the court later said in *Woods* v. *McCay, Treasurer, supra:*

"Much has been said in argument that the legislature could not create another court, which, it is claimed, is in effect another circuit court in the same territory which is occupied by one circuit court already.

"This court felt some embarrassment in *Clem* v. *State, supra,* on that question because the act in question there created another circuit court called a criminal circuit court to occupy the same territory occupied already by a circuit court. But this court got over the difficulty by holding that the name given was not important if the criminal circuit court was inferior to the circuit court already in existence, and held that it was so inferior. This seemed to be required by the constitution as it then was. It then provided that: 'The judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such inferior courts as the general assembly may establish.' R. S. 1876, p. 36, section 1, article 7, Constitution.

"But all embarrassment was taken away by the amendment to that section of March 14, 1881, R. S. 1894, section 161 (R. S. 1881, section 161.) The amendment was such as to make the last clause read: 'and in such other courts as the general assembly may establish.' Such courts need not now be made inferior to the circuit court, and the amendment was doubtless made to meet the growing wants of the State."

With the exception above noted we find no contention in the books such as that made herein. If the present act is unconstitutional on this ground then likewise are the acts creating the criminal courts and probate courts above mentioned. In view of their long existence and judicial as well as legislative acceptance of the validity of the acts by which they were created we would not now be justified in casting doubt upon their right to exercise the exclusive jurisdiction given them by the respective statutes. *State ex rel. Gleason* v. *Gerdink* (1909), 173 Ind. 245, 90 N. E. 70; *French* v. *State ex rel. Harley* (1895), 141 Ind. 618, 41 N. E. 2, 29 L. R. A. 113; Horack's Sutherland Statutory Construction, § 5103; 1 Cooley, Constitutional Limitations, 8th ed., pp. 141-151.

In their reply brief respondents, without attempting to apply any constitutional provisions, make certain contentions which relator has summarized as follows:

"These attacks are that the act in question (A) does not provide for a court of record, (B) provides for no appeal from the finding of the referee to the Judge of the Court, (C) provides for no appeal in any case from the decision of the Juvenile Court, (D) does not provide for jury trials in prosecutions for contributing to the delinquency of minors or in paternity proceedings, and (E) provides that the trial shall be behind closed doors and the public excluded, 'and the Judge thereof, under said act, is made a full and complete czar of all he surveys.'"

A. There is no merit in this contention. *Hooker* v. *State* (1844), 7 Blackf. 272; *Beach* v. *Woolford* (1855), 7 Ind. 351; *Harvey* v. *Osborn* (1877), 55 Ind. 535, 543.

B. Nor in this. The referee functions as a master or commissioner. His findings are not conclusive. His

recommendations may be disregarded by the court which is required "to enter such order or decree as it may deem proper."

C. Relator points to two companion acts, chapters 218 and 256, Acts 1945 (not yet published), which must be read in *pari materia.* The first provides that the procedure in prosecution for contributing to delinquency and similar offenses named in the act "shall be· as provided by law in criminal cases," which, by inference, includes the right of appeal under § 9-2301, Burns' 1933. The second expressly grants the right of appeal in proceedings as to delinquent, dependent and neglected children. Judgments in paternity cases are appealable under § 3-640, Burns' 1933 (Supp.). The present act does not purport to prescribe procedure in such cases but merely grants exclusive jurisdiction thereof to the juvenile court. If there is any class of cases within the jurisdiction of the juvenile court not covered, as to appeal, by the statutes cited, omission of express provision for appeal is not fatal. *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. (2d) 399; *State ex rel. White* v. *Hilgemann, Judge* (1941), 218 Ind. 572, 34 N. E. (2d) 129; *Joseph E. Seagram & Sons* v. *Board of Com'rs., etc.,* (1943), 220 Ind. 604, 45 N. E. (2d) 491.

D. Jury trial in criminal and civil cases is guaranteed by §§ 13 and 20 of the Bill of Rights. The latter has been construed to apply only to actions triable by jury at common law. See cases cited under the section in Vol. 1, Burns' 1933. These constitutional provisions and § 3-638, Burns' 1933 (Supp.), sufficiently safeguard the right to trial by jury as to all defendants, except juvenile delinquents, over whom the court has jurisdiction. Control of the custody of such children may be exercised, without jury trial, by

the juvenile courts. *Dinson* v. *Drosta* (1907), 39 Ind. App. 432, 80 N. E. 32. Accordingly there was no necessity for express provision in the act for trial by jury.

E. The permissive right to exclude from the courtroom at hearings "concerning such children . . . any and all persons that in his opinion are not necessary for the hearing of the case," even if it were invalid, is separable. Its validity will not be decided until contested by some one who has a right to raise the question and can show error to his prejudice.

We come finally to the contention of respondents relating to the validity of the appointment of relator as judge. When the act was passed there was already a special juvenile court in Marion County.

In general terms applying to any such situation, although only that one existed, § 1 provides that the incumbent judge of such court shall become the judge of the new juvenile court created by the act. In a county where there has been no special juvenile court the statutory provision is for appointment by the governor to hold from April 1, 1945, the effective date of the act, until January 1, 1949, when the term of a successor, elected in the general election of 1948, will begin. Respondents point to this difference in manner of selection of the first judge of the respective courts and say that it was the legislative intent "to deprive the people of their right of election of such judge in Lake County only." They rely upon Art. 15, § 3, but it is irrelevant. There could be no incumbent of a non-existent office so there could be no holding over. See *City of Aurora* v. *Morten* (1937), 212 Ind. 527, 536, 8 N. E. (2d) 972, 976. When the office came into existence it was vacant, not by virtue of the legislative declaration to that effect, but because it could not be filled until it had been created.

. "An existing office, without an incumbent, is vacant, whether it be a new or an old one. A new house is as vacant as one tenanted for years, which was abandoned yesterday. . . . The emergency which created the office, would imply that the vacancy in the office of judge in the new circuit should be filled immediately." *Stocking* v. *State* (1855), 7 Ind 326, 329.

There is here no controversy as to who should fill the vacancy. The act gives to the governor the appointing power which has been exercised. There is a valid court with incumbent judge. The jurisdiction given by the act is exclusive. These are all the questions which we need decide to sustain the writ. Accordingly the temporary writ of prohibition heretofore issued is made permanent except as to Felix Kaul, John W. Lyddick and Walter Mybeck as individuals. As to them the writ is dissolved.

Note.—Reported in 61 N. E. (2d) 168.