752 P.2d 422 (1988)
Marion LEHMAN, Appellant (Employee-Claimant),
v.
The STATE of Wyoming, ex rel. WYOMING WORKERS' COMPENSATION DIVISION, Appellee (Objector-Defendant),
v.
WISMER/BECKER, (Employer-Defendant).
No. 87-4.
Supreme Court of Wyoming.
April 5, 1988.
Terry J. Harris, Cheyenne, for appellant.
Joseph B. Meyer, Atty. Gen., Susan Maher Overeem and Josephine T. Porter, Asst. Attys. Gen., for appellee.
Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.
THOMAS, Justice.
The only question presented in this appeal is whether the evidence is sufficient to support the determination of the district court that Marion Lehman was not entitled to receive an award of additional temporary disability nor an award of permanent disability. We have reviewed the record in accordance with the applicable standard, and we conclude that the evidence is sufficient to sustain the decision of the inferior *423 court.[1] We affirm the judgment of that court.
Lehman poses these issues in his brief:
"I. Did the district court err in failing to award appellant his claim for additional temporary total disability benefits?
"II. Did the district court err in failing to modify appellant's previously awarded permanent partial disabilities to an ultimate award of permanent total disability?"
The State combines the two propositions and describes the sole issue as:
"Whether the district court's denial of additional temporary total disability benefits and permanent total disability benefits is supported by substantial evidence."
In September of 1981, in the course of his employment as an ironworker, Lehman was attempting to maneuver a forty-foot steel air chute into position. The chute weighed 400 to 500 pounds, and when it slipped, during the maneuver, Lehman grabbed it to prevent it from falling some eighty feet to the ground. Lehman's effort was successful but resulted in multiple injuries to him, including damage to his right elbow, right shoulder and neck. Lehman was sixty-four years old at the time of this accident, and he never has been well enough to return to full-time employment since it occurred.
Lehman required extensive medical treatment for his injuries, and all of those bills have been paid by the Workers' Compensation Division. He first was treated by an orthopedic surgeon who performed two surgical procedures on his elbow and furnished a variety of treatment and therapy for his shoulder injury. The orthopedic surgeon ultimately assigned a 33% permanent partial impairment to Lehman's elbow and a 25% permanent partial impairment to his shoulder. Lehman was referred to a neurosurgeon for evaluation and treatment of his neck injury and its associated pain and numbness. In January of 1984, a posterior cervical laminectomy was performed with root canal decompression and removal of spurs. In November of 1985, Lehman again sought care from the neurological surgeon for further problems with his neck and related problems in his right arm. The following February, the neurosurgeon performed an anterior disk removal, nerve root decompressions and further removal of bone spurs.
Lehman was awarded permanent partial disability benefits for the injuries to his right elbow and shoulder. In connection with that treatment, he received temporary total disability payments from the date of the injury until August 31, 1982, when he was initially released to return to work. He also was awarded temporary total disability benefits from the date of the first neck surgery, January 13, 1984, until July 7, 1984. In August of 1984, the neurosurgeon reported that Lehman's neck condition had stabilized, and the doctor assigned a 20% permanent partial disability to the whole body because of the injury to Lehman's neck. In October of 1984, Lehman was awarded permanent partial disability benefits for the neck injury.
Following the second neck surgery on February 25, 1986, Lehman filed a claim for additional temporary total disability benefits covering the period November 1, 1985 through April, 1986. The Workers' Compensation Division objected to this claim and Lehman then petitioned the court for an award of the benefits, requesting a hearing. Prior to the hearing, the petition *424 was amended to seek alternative relief in the form of changing the original permanent partial disability award to an award of permanent total disability. The district court held a hearing and issued a decision letter which was followed by an order denying Lehman's claims for additional benefits. The district court ruled that Lehman had not sustained his burden of proof to demonstrate increased incapacity due solely to his injury. This appeal is taken from that decision.
Supporting his first issue, Lehman contends that the district court erred in not awarding additional temporary total disability benefits.[2] The definition for temporary total disability was found in § 27-12-402(a), W.S. 1977, which provided:
"Temporary total disability means a compensable injury which temporarily incapacitates the employee from performing any work at any gainful occupation for which he is reasonably suited by experience or training for the time, but from which he may be able to resume work."
Lehman invoked § 27-12-606, W.S. 1977, which provided:
"Where an award of compensation has been made in favor of or on behalf of an employee for any benefits under this act [§§ 27-12-101 through XX-XX-XXX], an application may be made to the clerk of district court by any party within four (4) years from the date of the last award, or at any time during which monthly payments under an award are being made, for additional benefits of any type or nature or for a modification of the amount of the award on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud."
There is a conflict in the evidence with respect to whether Lehman experienced an increase in incapacity subsequent to the 1984 award of 20% partial disability. In August of 1984, the neurosurgeon testified that he had concluded that Lehman probably never would be able to return to the heavy kind of work he was accustomed to doing. There also is evidence that in 1983 and 1984 Lehman attempted on two or three occasions to do some part-time work, either as a self-employed welder or gratuitously for friends. On each occasion, he had to quit within a few hours because of his injuries. There is some evidence which indicates deterioration of Lehman's physical condition requiring the second neck surgery. The neurosurgeon testified, however, that basically Lehman's condition was degenerative, and that the changes he observed in 1985 were "a part of the continuum of his basic problem of degeneration accelerated by the accident." The doctor, in describing Lehman's condition in 1986, testified:
"Of course we have to consider the age here. He's older than he was before. He's now 69 years old, and he also has two and a half to three years more natural degeneration going on that has nothing to do with the accident because his accident didn't cause the degeneration, it was incidental to or associated with."
The neurosurgeon also testified that, neurologically, Lehman was basically the same in 1985 as he had been a year earlier. He stated that Lehman had the same hypertrophic changes in the anterior spinal cord area, the same degree of neck motions and similar reflexes. The doctor further testified that the 1985 X-rays of Lehman's neck showed no changes since 1984 and that the report from the radiologist advised, "[n]o new abnormalities or acute aspects are recognized." The neurosurgeon explained that a second surgery, an anterior approach, often was a required continuation of the first surgical procedure done from the posterior side. We find this significant exchange in the neurosurgeon's deposition:
"Q. * * * [D]o you have an opinion as to whether there's been any change in the permanent functional impairment resulting from his original neck injury subsequent *425 to the 20 percent rating you rendered on August 8, 1984?
"A. * * * Basically, I doubt if his impairment would be any more than 25 percent physical, and we put down 20 percent before * * * it would seem that 20, 25 percent permanent partial impairment would be certainly in the ballpark."
The burden is assigned to the claimant, Lehman, to establish every essential element of his claim by a preponderance of the evidence. Deroche v. R.L. Manning Company, Wyo., 737 P.2d 332 (1987); McCarty v. Bear Creek Uranium Company, Wyo., 694 P.2d 93 (1985); Alco of Wyoming v. Baker, Wyo., 651 P.2d 266 (1982). The Wyoming rule is in accord with the general rule requiring that the party asserting a change of condition (increase or decrease of incapacity) must assume the burden of proof whether the party be claimant or employer. 3 A. Larson, Workmen's Compensation Law § 81.22(c) (1983). In invoking § 27-12-606, W.S. 1977, Lehman assumed the burden of demonstrating "increase of incapacity due solely to the injury."
We recognize that these statutes are to be liberally construed to effectuate their beneficent purpose. Matter of Abas, Wyo., 701 P.2d 1153 (1985); Matter of Johner, Wyo., 643 P.2d 932 (1982). If it is rationally possible, workers' compensation statutes are to be construed so that industry, rather than the injured workman, bears the burden of industrial accidents. Pacific Power & Light v. Parsons, Wyo., 692 P.2d 226 (1984); Conn v. Ed Wederski Construction Company, Wyo., 668 P.2d 649 (1983). We are not permitted, however, to ignore clear statutory language so as to extend coverage and benefits to situations that do not reasonably fall within the intended ambit of the statutes. Matter of Abas, supra; Matter of Van Matre, Wyo., 657 P.2d 815 (1983).
When we are asked to review judgments in workers' compensation cases, we accept the evidence of the prevailing party as true and give it the benefit of every favorable inference which may be drawn. Deroche v. R.L. Manning Company, supra; State ex rel. Worker's Compensation Division v. Lewis, Wyo., 739 P.2d 1225 (1987); Claim of Grindle, Wyo., 722 P.2d 166 (1986). The extent and duration of an injured workman's disability are questions of fact which should be decided by the trial court, and we do not disturb the findings of the trial court if they are supported by any evidence and are not clearly erroneous or contrary to the great weight of the evidence. Deroche v. R.L. Manning Company, supra; Pacific Power & Light v. Parsons, supra; Diamond Management Corporation v. Empire Gas Corporation, Wyo., 594 P.2d 964 (1979). Applying these rules to the summary of the evidence above, we must conclude that the district court reasonably could find that there was no increase in Lehman's incapacity in late 1985 and 1986 which had the effect of temporarily incapacitating him "from performing any work at any gainful occupation for which he is reasonably suited by experience or training, for the time, but from which he may be able to resume work." (Emphasis added.) Section 27-12-402, W.S. 1977. Substantial evidence supports the finding by the district court that Lehman failed to sustain his burden of proof by showing an increase of incapacity due solely to the injury.
We note that, as a basis for its decision, the district court relied upon the proposition that it could not award additional temporary total disability subsequent to a permanent partial disability award. Parnell v. State ex rel. Wyoming Worker's Compensation Division, Wyo., 735 P.2d 1367 (1987), holds to the contrary, but that error is not prejudicial in view of the finding, which we sustain, that Lehman did not carry his burden of proof.
Our disposition of Lehman's claim that the district court erred in denying his alternative request for permanent total disability is consistent. Permanent total disability was defined in § 27-12-405(a), W.S. 1977 as:
"Permanent total disability means the loss of both legs or both arms, total loss of eyesight, paralysis or other conditions permanently incapacitating the employee *426 from performing any work at any gainful occupation for which he is reasonably suited by experience or training."
Lehman's claim for permanent total disability also was presented by invoking § 27-12-606, W.S. 1977. The same evidence which has been recited previously demonstrates that Lehman did not meet his burden of establishing "an increase * * * of incapacity due solely to the injury." His problems in 1985 and 1986 were attributable to natural degeneration, as accelerated by the accident, and there was not shown any change from his previous condition.
We hold that substantial evidence supports the district court's determination that Lehman failed to prove any increase in permanent disability due solely to his injury. This conclusion is the same as our conclusion that he failed to demonstrate any additional partial disability. There is substantial evidence to sustain the district court's determination with respect to both aspects of Lehman's contentions. It cannot be characterized as clearly erroneous or contrary to the great weight of the evidence.
The judgment of the district court is affirmed.
NOTES
[1] "Inferior courts" is a phrase which has an accepted connotation as legal words of art in constitutional law and general law. It connotes any court from which an appeal or writ of review will lie. E.g., Kempe's Lessee v. Kennedy, 9 U.S. (5 Cranch) 173, 3 L.Ed. 70 (1809); Ex parte State ex rel. Carmichael, 251 Ala. 57, 36 So.2d 457 (1948); Sanders v. State, 55 Ala. 42 (1876); Ex parte Orr, 51 Ala. 42 (1874); Laizure v. Baker, 91 Colo. 48, 11 P.2d 560 (1932); State v. Sullivan, 95 Fla. 191, 116 So. 255 (1928); State ex rel. Gannon v. Lake Circuit Court, 223 Ind. 375, 61 N.E.2d 168 (1945); Bailey v. Winn, 113 Mo. 155, 20 S.W. 21 (1892); State v. Daniels, 66 Mo. 192 (1877); State ex rel. Harvey v. Medler, 19 N.M. 252, 142 P. 376 (1914); Haddock v. Johnson, 80 Okla. 250, 194 P. 1077 (1920); Kirkwood v. Washington County, 32 Or. 568, 52 P. 568 (1898); McMinnville & M.R. Co. v. Huggins, 47 Tenn. (7 Cold.) 217 (1869); Holden v. N.L. Industries, Inc., Utah, 629 P.2d 428 (1981).
[2] Chapter 12 of Title 27, Wyoming Worker's Compensation Act, §§ 27-12-101 through XX-XX-XXX, W.S. 1977, was repealed in 1986 and re-enacted as ch. 14 of Title 27, §§ 27-14-101 through XX-XX-XXX, effective July 1, 1987. Lehman's claims arose under the former statute, and it is those provisions which are cited and alluded to in this case.