214 P.3d 228 (2009)
2009 WY 102
In the Matter of the Worker's Compensation Claim of Paul D. GLAZE, Appellant (Claimant-Petitioner),
v.
STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Objector-Respondent).
No. S-08-0231.
Supreme Court of Wyoming.
August 19, 2009.
*229 Representing Appellant: James R. Salisbury of Riske, Salisbury & Kelly, P.C., Cheyenne, Wyoming.
Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; and James Michael Causey, Senior Assistant Attorney General.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
HILL, Justice.
[¶ 1] Paul Glaze appeals from the district court's order affirming the Medical Commission's ruling that he was not entitled to additional temporary total disability benefits. The Medical Commission determined that Mr. Glaze failed to meet his burden of proving that, after he had been awarded permanent partial disability benefits, he had suffered an increase in incapacity due solely to his work related injury. After reviewing the entire record in accordance with our standard of review, we conclude that the Medical Commission's decision was contrary to the overwhelming weight of the evidence. Consequently, we reverse and remand.

ISSUES
[¶ 2] Mr. Glaze presents related issues on appeal:
A. Whether the Medical Commission committed an error of law by denying [Mr. Glaze] temporary total disability benefits subsequent to his award and receipt of permanent partial disability benefits.
B. Whether the decision of the Medical Commission is supported by substantial evidence.
1. Whether the determination by the Medical Commission that [Mr. Glaze] failed to show that the surgery at issue was solely related to the work-place injury is supported by substantial evidence.
2. Whether the determination by the Medical Commission that [Mr. Glaze] failed to show an increase in incapacity is supported by substantial evidence.
Although phrased more generally, the State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division (Division) propounds a similar issue.

FACTS
[¶ 3] Mr. Glaze suffered a work related back injury in 2002 and underwent surgery to fuse the herniated disc at level L5-S1. The Division paid medical benefits and temporary total disability benefits. In 2003-2004, Mr. Glaze received permanent partial impairment benefits and a permanent partial disability award pursuant to Wyo. Stat. Ann. § 27-14-405 (LexisNexis 2009). Although his physician, Mary Neal, M.D., released him to return *230 to light duty work, he did not work after the 2002 injury.
[¶ 4] On February 9, 2005, Mr. Glaze underwent surgery to repair damage to the segment adjacent to the fused segment, L4-5. Dr. Neal certified that Mr. Glaze was unable to work as a result of the surgery, and he applied for temporary total disability benefits. The Division issued a final determination, denying Mr. Glaze's request for benefits pursuant to Wyo. Stat. Ann. § 27-14-404(b) (LexisNexis 2009) because he had already received permanent partial disability benefits and had not returned to gainful employment.
[¶ 5] On March 3, 2005, Mr. Glaze filed an objection to the Division's final determination. He requested that the matter be referred to the appropriate administrative agency for contested case proceedings. His notice of objection also stated:
It is the position of Mr. Glaze that he has suffered an increase of incapacity solely related to his work related injury and therefore his current claims for temporary total disability benefits are compensable under the Wyoming Workers' Compensation Act. Please consider this correspondence as a petition for modification of benefits pursuant to W.S. § 27-14-605.
The Division referred the case to the Medical Commission.
[¶ 6] On April 29, 2005, Glaze filed, with the Medical Commission, a formal petition for modification of benefits under Wyo. Stat. Ann. § 27-14-605(a) (LexisNexis 2009), which allows additional benefits if the claimant has suffered an increase of incapacity due solely to the work related injury.
[¶ 7] The hardware used to fuse the L4-5 segment in February of 2005 failed, and Mr. Glaze underwent another surgery on May 27, 2005 to repair the problem. Dr. Neil continued to certify that Mr. Glaze was temporarily totally disabled until October 1, 2005.
[¶ 8] After a contested case hearing, a Medical Commission hearing panel ruled that Mr. Glaze was not entitled to additional temporary total disability benefits because he had not shown that he had suffered an increase of incapacity due solely to his work related injury. The district court affirmed the Medical Commission's decision, and Mr. Glaze appealed.

STANDARD OF REVIEW
[¶ 9] When we consider an appeal from a district court's review of an administrative agency's decision, we give no deference to the district court's decision. Instead, "`we review the case as if it had come directly to us from the administrative agency.'" Newman v. State ex. rel Wyoming Workers' Safety and Compensation Division, 2002 WY 91, ¶ 7, 49 P.3d 163, 166 (Wyo.2002) (quoting French v. Amax Coal West, 960 P.2d 1023, 1027 (Wyo.1998) (citation omitted)). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2009), which states in relevant part:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
(i) Compel agency action unlawfully withheld or unreasonably delayed; and
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
....
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
[¶ 10] We recently refined our substantial evidence standard of review in Dale v. S & S Builders, LLC, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo.2008):
If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary *231 to the overwhelming weight of the evidence in the record as a whole.
As always, we review an agency's conclusions of law de novo, and "`[w]e will affirm an agency's legal conclusion only if it is in accordance with the law.'" Diamond B Servs., Inc. v. Rohde, 2005 WY 130, ¶ 12, 120 P.3d 1031, 1038 (Wyo.2005) (quoting DC Prod. Serv. v. Wyo. Dep't of Employment, 2002 WY 142, ¶ 7, 54 P.3d 768, 771 (Wyo. 2002)).

DISCUSSION
[¶ 11] Mr. Glaze challenges the Medical Commission's ruling that he did not meet his burden of proving that he was entitled to receive additional temporary total disability benefits pursuant to § 27-14-605. Temporary total disability is defined as
that period of time an employee is temporarily and totally incapacitated from performing employment at any gainful employment or occupation for which he is reasonably suited by experience or training.
Wyo. Stat. Ann. § 27-14-102(a)(xviii) (LexisNexis 2009). Temporary total disability benefits are governed by Wyo. Stat. Ann. § 27-14-404 (LexisNexis 2009), which states in relevant part:
(a) If after a compensable injury is sustained and as a result of the injury the employee is subject to temporary total disability as defined under W.S. XX-XX-XXX(a)(xviii), the injured employee is entitled to receive a temporary total disability award ...
(b) Any employee awarded benefits under W.S. XX-XX-XXX [permanent partial disability benefits] or XX-XX-XXX is not eligible for benefits under subsection (a) of this section unless the employee has returned to gainful employment and following employment, undergoes additional surgery not reasonably contemplated before the award for permanent impairment or disability and then only for a reasonable period of recuperation, confinement for medical care during the actual period of confinement or unless application is made and an award is granted under W.S. XX-XX-XXX.
[¶ 12] The last part of § 27-14-404(b) allows additional temporary total disability benefits after a permanent partial disability award if the claimant qualifies for additional benefits under § 27-14-605. The pertinent part of that provision states:
(a) If a determination is made in favor of or on behalf of an employee for any benefits under this act, an application may be made to the division by any party within four (4) years from the date of the last payment for additional benefits or for a modification of the amount of benefits on the ground of increase or decrease of incapacity due solely to the injury, or upon grounds of mistake or fraud. The division may, upon the same grounds and within the same time period, apply for modification of medical and disability benefits to a hearing examiner or the medical commission, as appropriate.
[¶ 13] The dispute in this case focused on whether or not Mr. Glaze had suffered an increase of incapacity due solely to his work related injury. As with other workers' compensation claims, the claimant has the burden of proving he is entitled to additional benefits under § 27-14-605(a). See, In re Hernandez, 8 P.3d 318, 322-23 (Wyo.2000); Lehman v. State ex rel. Wyoming Workers' Compensation Division, 752 P.2d 422, 425 (Wyo.1988). The extent and duration of an injured worker's disability are questions of fact. Lehman, 752 P.2d at 425.
[¶ 14] The Medical Commission found:
35. Mr. Glaze has not met his burden of proof for entitlement to additional TTD benefits under W.S. § 27-14-605(a). Mr. Glaze has not proven either an increase in incapacity nor has he proven that any alleged increase in incapacity was due solely to his original injury of January 3, 2002.
As to whether the alleged increase in incapacity was due solely to the work injury in question, in 1992 he sustained an injury to his back and had surgery at his L5-S1 level which was the removal of a part of his disc. He continued to have some degree of symptoms after that surgery. After the work injury in January of *232 2002, x-rays and radiographic studies of his low back showed pre-existing degenerative changes at L3-4 and L5-S1. His back at the L4-5 level was normal. A discogram procedure showed degenerative changes at L3-4 and L5-S1. The L4-5 level was again normal. Surgery was performed in August of 2002 at the L5-S1 level. He never returned to work. Surgery in February and May of 2005 included surgery to the L4-5 disc space which was previously noted as normal. This disc has degenerated with the passage of time, possibly accelerated by the prior surgery as opined by Dr. Neal. Radiographic studies showed a progressive degeneration of the L4-5 disc space over the years which lead to surgery at this level. Incapacity caused by the natural degeneration of a condition and accelerated by a work accident is not incapacity due solely to a compensable injury. Through leading questions counsel for the Employee/Claimant was able to get Dr. Neal to state the 2005 surgeries were directly related to the work injury. Being "directly related" and "solely related" are not the same. Dr. Neal testified the 2005 surgery at L4-5 was necessary due to degeneration.
Dr. Neal's opinion is further disregarded in that it appears she never actually examined Mr. Glaze. While she would take a history and review radiographic studies, she never performed an actual "hands on" examination. She further appears to be acting as an advocate for her patient and she may well be concerned with ongoing payment for her treatment of Mr. Glaze which may well impact her opinions in this matter.
36. As to the claimed increase in incapacity, Mr. Glaze's pain has remained essentially the same since the August 2002 surgery although it has waxed and waned. Following the 2002 surgery he received a very high impairment rating of 24%. He testified his restrictions in terms of sitting, standing[,] lifting and walking are the same now as they were after his August 2002 surgery. In July of 2004 he filled out an application for permanent partial disability which indicated he was essentially incapable of doing anything. He signed this form certifying his answers were true. He never returned to any type of work. His condition before and after the February 2005 and May 2005 surgery has remained essentially plateaued, although he appears to have had less symptoms after these surgeries. By July of 2005, he was doing very well and reporting no pain. He was then in a car accident which, according to the records, resulted in increased pain for an extended period of time. His condition now is better than it was after the January 2002 work injury. The evidence does not reflect an increase in incapacity.
[¶ 15] In Parnell v. State ex rel. Wyoming Workers' Compensation Division, 735 P.2d 1367, 1368 (Wyo.1987) (citations omitted), we discussed the types of disability benefits contemplated by the Wyoming Worker's Compensation Act:
In the usual case, temporary total disability will be awarded for a single initial period of recovery and stabilization. Once stabilization occurs, the extent of permanent disability, whether partial or total, should be determined and the employee should receive an appropriate award. Such an award is "subject to the concept of finality."
Ideally, an injured employee will not return to a condition of temporary total disability after receiving a permanent partial disability award. But some cases, like the present case, do not follow the ideal pattern. Realizing this, the legislature enacted § 27-12-606, W.S.1977, [now § 27-14-605] which allows an employee to apply for "additional benefits" ... on the ground of increase of incapacity[.]
....
The Act does not define the term "increase of incapacity." We think it is clear, however, that when an employee's condition changes from permanent partial disability to temporary total disability, his incapacity is increased.
See also, Hernandez, 8 P.3d at 322. Thus, under § 27-14-605(a), a claimant may be entitled to temporary total disability benefits even if his permanent partial disability has not increased.
*233 [¶ 16] A physician's certification that a claimant is temporarily totally disabled is evidence of an increase in incapacity; however, it is not determinative. State ex rel. Wyoming Workers' Compensation Division v. Henriksen, 2001 WY 42, ¶¶ 8-9, 21 P.3d 1185, 1187 (Wyo.2001). Thus, in order to meet his burden of proof, the claimant must present evidence showing an increase in his incapacity since the permanent partial disability award. Britton v. Halliburton Services, 895 P.2d 45, 48 (Wyo.1995).
[¶ 17] Mr. Glaze received a permanent partial impairment rating of 24% of the whole person in 2003 and accepted an award based upon that rating. He subsequently received a permanent partial disability award to compensate him for loss of earning capacity. As part of his application for permanent partial disability benefits, Mr. Glaze stated that he could not bend, stoop, twist, squat, kneel, crouch or crawl, although he could occasionally climb stairs and ladders. He also could not work with heavy machinery and he was restricted from carrying, pushing or pulling anything over 20 pounds. The physical capacities questionnaire prepared by Mr. Glaze's physicians indicated that he was probably capable of performing full time work so long as appropriate restrictions were respected.
[¶ 18] Dr. Neal released Mr. Glaze to light duty work with restrictions.[1] Mr. Glaze testified that he looked for work, but nobody would hire him.
[¶ 19] Dr. Neal certified that Mr. Glaze was temporarily totally disabled from February 8, 2005 (the day before the first 2005 surgery) through October 1, 2005. Dr. Neal testified that Mr. Glaze was unable to perform any gainful employment following the surgery. She testified that the typical period of recuperation after surgery is 4 to 6 months, although it could extend to one year. Dr. Neal also testified that Mr. Glaze was temporarily totally disabled after the May 2005 surgery to fix the hardware malfunction from the February 2005 surgery. Again, she testified the recuperation period may take one year. Mr. Glaze testified that he was "laid up" after the 2005 surgeries and underwent physical therapy for a period of time.
[¶ 20] In Parnell, the claimant's physician explained the relationship between the claimant's surgery and his ability to work. The physician wrote a letter stating that his surgery rendered him temporarily totally disabled because of his need to use crutches while he was recuperating. Parnell, 735 P.2d at 1369. Similarly, in Henriksen, ¶¶ 4, 9, 21 P.3d at 1186-87, evidence was presented showing that the claimant's physician advised her to rest and not to work while he treated her.
[¶ 21] As the definition of temporary total disability makes clear, the right to such benefits depends upon a claimant's ability to perform gainful employment. Looking at the evidence presented about Mr. Glaze's ability to work, the record demonstrates that he was released to light duty work around the time he received permanent partial disability benefits. Although he did not return to work because he could not find a job with his restrictions, the documents associated with the permanent partial disability ratings and awards indicated that he had the physical ability to do so. Dr. Neal testified that, after undergoing surgery in February of 2005, Mr. Glaze was unable to perform any gainful employment. The Medical Commission's finding that he had not suffered any increased incapacity focused on his reported pain levels in the months after his 2005 surgeries and his permanent physical restrictions, which did not appear to be significantly different at the time of the hearing than they were when he was rated for permanent partial impairment and disability purposes. The Commission did not concentrate on the temporary incapacity occasioned by the two surgeries. The hearing panel's questions to Mr. Glaze at the hearing and its decision seem to have pertained to determining whether Mr. Glaze had an increase in permanent disability. For example, the panel asked several questions about how he felt at the time of the hearing in comparison to how he felt before *234 and after the 2002 surgery. Those questions did not help in determining whether he was temporarily totally disabled while recuperating from his 2005 surgeries.
[¶ 22] Parnell and Hernandez specifically stated that the claimant is not required to show that his level of permanent disability increased. He simply must show that, after receiving a permanent partial disability award, he went through a period of time in which he was incapable of performing any gainful employment. In this case, the overwhelming weight of the evidence establishes that Mr. Glaze's incapacity increased following his surgeries.[2]
[¶ 23] The Medical Commission also found that Mr. Glaze had not established any alleged increase in incapacity was due solely to his work related injury because the medical evidence showed the surgery to L4-5 was necessitated by natural degeneration. The evidence of the progression of his symptoms at the L4-5 level is aptly recounted in the Medical Commission Finding No. 35, above. However, the Medical Commission's conclusion that the degeneration was natural is not supported by the evidence. The undisputed evidence clearly established that Mr. Glaze did not have any problem with his back at level L4-5 until after the fusion of L5-S1, which was necessitated by the 2002 work related injury. Dr. Neal testified it is well-documented that a fusion at one level places additional force on the level above the fusion, resulting in degeneration of the disc at the higher level. She stated that the adjacent segment degeneration process normally takes 10 to 15 years, but in Mr. Glaze's case it happened in an extraordinarily short time. Dr. Neal stated unequivocally that the degeneration process in the L4-5 segment would not have occurred if he had not undergone the L5-S1 fusion in 2002.
[¶ 24] The Medical Commission cited to Lehman, in support of its ruling that Mr. Glaze was not entitled to additional temporary total disability benefits. In that case, we agreed that Mr. Lehman had not met his burden of proving he had suffered an increase in incapacity due solely to his work related injury. 752 P.2d at 424-26. Mr. Lehman's neurosurgeon testified that his "condition was degenerative, and that the changes he observed ... were a part of the continuum of his basic problem of degeneration accelerated by the accident." Id. at 424. That testimony stands in marked contrast to Dr. Neal's unequivocal testimony that Mr. Glaze would not have suffered degeneration at L4-5 if he had not undergone fusion of the lower level segment, L5-S1, as a result of his work related accident. Thus, Lehman does not support the Medical Commission's decision that Mr. Glaze failed to prove that his 2005 surgeries and incapacity resulted solely from the 2002 work related injury.
[¶ 25] The Medical Commission decision also emphasizes that Dr. Neal did not testify that his increased incapacity was due solely to the work related injury. In April of 2005, Dr. Neal responded to questions posed by the claimant's attorney in correspondence by stating that the February 9, 2005 surgery was reasonable, necessary, and related to the work related accident of January 3, 2002. Dr. Neal testified that the May 27, 2005 surgery was necessary because the hardware implanted during the February 9, 2005 surgery had failed. She stated:
Q.... Doctor, do you have an opinion based upon a reasonable degree of medical probability of whether that May 27, 2005 surgery was solely and directly related to Mr. Glaze's work related accident or the treatment of that work related accident?
A. What was the beginning of the question, do I feel that it was directly related? Yes.
The attorney did not follow up to clarify whether she believed the May 27, 2005 surgery was due solely to the work related injury.
[¶ 26] Dr. Neal then went on to discuss her recommendation for a future surgery to address the nonunion of the fusion which occurred "some months" following the May 27, 2005 surgery. She testified:
Q.... Dr. Neal, with respect to your recommendation of future surgery, do you feel that that recommended surgery is reasonable *235 and necessary and solely related to the work related accident of 2002 or the treatment of that injury?
A. Yes.
[¶ 27] As we have stated in the context of a claim for workers' compensation benefits for an aggravation of a pre-existing injury, the medical expert is not required to utter any particular magic words to establish the requisite causation. See State ex rel. Wyoming Workers' Safety and Compensation Division v. Slaymaker, 2007 WY 65, ¶ 18, 156 P.3d 977, 984 (Wyo.2007); In re Boyce, 2005 WY 9, ¶ 11, 105 P.3d 451, 455 (Wyo.2005). So long as the medical expert's testimony contains sufficient information, the fact that she did not use the exact statutory language is irrelevant. Dr. Neal testified that a future surgery to repair a nonunion of the fusion performed in the 2005 surgeries was solely related to the 2002 accident. Obviously, then, the 2005 surgeries and the incapacity occasioned by those surgeries would be solely related to the work related accident. The fact that the physician fumbled a little on the question about the 2005 surgeries and did not specifically state that they were solely related to the work related accident is not fatal to Mr. Glaze's claim when the evidence clearly established that, in the physician's opinion, the 2005 surgeries and the associated incapacity were due solely to the 2002 work related injury and the treatment thereof.
[¶ 28] The Medical Commission decision also intimates that a prior back injury in 1992 really caused Mr. Glaze's 2005 problems. However, the medical evidence and Dr. Neal's testimony do not lead to that conclusion. Although Mr. Glaze first injured his back in 1992, he returned to work after he was treated for that injury with no permanent restrictions. It is clear from the record that level L4-5 was normal from 1992 until after the 2002 work related accident and fusion of L5-S1. Thus the evidence clearly shows that the adjacent segment breakdown at L4-5 that led to the 2005 surgeries and associated incapacity occurred after the 2002 surgery.
[¶ 29] Finally, we address the Medical Commission's statement that it did not consider Dr. Neal's testimony that Mr. Glaze's increase in incapacity was solely related to the injury to be credible. We defer to the agency's determination of witness credibility unless it is clearly contrary to the overwhelming weight of the evidence. Bush v. State ex rel. Wyoming Workers' Safety and Compensation Division, 2008 WY 117, ¶ 19, 193 P.3d 260, 265-66 (Wyo.2008). The Medical Commission determined that Dr. Neal was not credible because 1) the records did not indicate that she physically examined Mr. Glaze, but, instead, only reviewed the radiographic studies and took his history; and 2) she appeared to be acting as an advocate for her patient and "may well be concerned with ongoing payment for her treatment" of Mr. Glaze. The second reason could be said of any treating physician and, consequently, does not justify a wholesale disregard of her testimony. As to the fact that she did not physically examine the patient, the Medical Commission does not explain how a physical examination would have aided Dr. Neal in determining whether the 2005 surgeries and incapacity were solely due to the work related injury. Her explanation of the propensity of adjacent segments to degenerate and the fact that there was no evidence of an intervening cause renders the Medical Commission's conclusion that Dr. Neal was not credible clearly contrary to the overwhelming weight of the evidence. The Medical Commission's criticisms of Dr. Neal are especially perplexing because it frequently relies on "paper reviews" made by physicians who never saw the patient, but still provide opinions about the patient that directly contradict information provided by the treating physician.
[¶ 30] The Medical Commission's finding that Mr. Glaze did not meet his burden of proving that he was entitled to additional TTD benefits under §§ 27-14-605(a) and 27-14-404(b) is contrary to the overwhelming weight of the evidence. Consequently, its ruling is not supported by substantial evidence.
[¶ 31] Reversed and remanded with directions that benefits be awarded to Glaze consistent with this opinion.
NOTES
[1] Dr. Neal testified on cross examination that Mr. Glaze was not capable of performing any type of work after the August 2002 surgery. However, that statement was not made with reference to any time period.
[2] The Medical Commission did not rule on any term of incapacity.