2011 WY 49

**In the Matter of the Worker's Compensation Claim of Paul WATKINS, Appellant (Claimant),**

v.

**STATE of Wyoming, ex rel., WYOMING MEDICAL COMMISSION and Wyoming Workers' Safety and Compensation Division, Appellee (Respondent).**

No. S–10–0129.

Supreme Court of Wyoming.

March 21, 2011.

Representing Appellant: Bill G. Hibbler of Bill G. Hibbler, P.C., Cheyenne, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; John W. Renneisen, Deputy Attorney General; James M. Causey, Senior Assistant Attorney General; Kelly Roseberry, Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1]  Paul Watkins (the appellant) felt a pop in his back and began experiencing pain after he jumped down from his work truck.

The Wyoming Workers' Safety and Compensation Division (the Division) awarded temporary total disability (TTD) benefits for a period of time and then eventually terminated those benefits. The Division's denial of benefits was affirmed in a contested case hearing before the Wyoming Medical Commission (the Commission) and the appellant appealed from that decision. Finding the Commission's decision to be supported by substantial evidence, we will affirm.

## ISSUE

[¶ 2]   Was the Commission's determination that the appellant did not meet his burden of proving he was entitled to further TTD benefits supported by substantial evidence?

## FACTS

[¶ 3]   When the appellant was in his early teens, he suffered a work-related injury in Colorado, requiring a surgical discectomy at the L4 level of his spine. On a separate occasion, in 1989, the appellant was seen at an emergency room in Colorado, reporting that after bending over, he "felt a sharp pop" in the lumbar area of his back. The appellant returned to the same emergency room in 1994 and 1996 complaining of back pain. In 2000, the appellant went to a walk-in clinic in Casper, Wyoming, complaining of severe back pain after his "back popped." There he was diagnosed with a lumbar strain, with pain at the L3–L4 level.

[¶ 4]   On January 4, 2007, the appellant was seen in the emergency room in Cheyenne, Wyoming, again complaining of back pain. The doctor's report indicated that "2 days ago [the appellant] was at work and jumped off a tire and heard a pop in his back. The patient ever since then has had back pain in the upper L-spine region. . . ." An x-ray of the appellant's lumbar spine showed no evidence of acute fractures or dislocations. The radiologist did note, however, facet joint disease and narrowed disc space at the L4–L5 level of the spine, the level of the appellant's previous discectomy. The appellant was referred to Dr. Steven Beer, a neurosurgeon in Cheyenne.

[¶ 5]   The appellant was seen by Dr. Beer on January 8, 2007. According to Dr. Beer's report, the appellant reported "a painful pop when he stepped off a tire. He has had pain in the low back and down into the right buttock and right leg ever since." Dr. Beer's examination included strength, reflexes, sensation, and straight leg raising, all of which were "normal." Dr. Beer did however note that "[t]he [appellant] appear[ed] to [be in] pain as he change[d] positions."

[¶ 6]   On Dr. Beer's referral, the appellant underwent a magnetic resonance image (MRI) test on January 15, 2007. The interpreting radiologist found some laminectomy changes and degenerative facet changes at the L4–L5 level, as well as disc degenerative disease. The MRI showed a disc bulge at the L4–L5 level and a small fragment in the epidural fat space, but the radiologist observed that "[i]t does not appear to create any appreciable pressure effect to the thecal sac or to the exiting right V nerve. . . ." Dr. Beer's interpretation of this MRI was a "large herniated disc at the L4–5 on the right."

[¶ 7]   A few days after his first visit with Dr. Beer, the appellant submitted a Wyoming Report of Injury to the Division alleging that his "back popped" when he jumped from his trailer tire to the ground after applying a tarp to the load in his truck. The report included a question asking whether this body part had been previously injured. The appellant checked the "no" box. On February 28, 2007, the Division issued a Final Determination on Temporary Total Disability Rate of Pay, approving the appellant's request for TTD benefits.

[¶ 8]   The appellant followed up with Dr. Beer again on February 28, 2007, complaining of right leg pain. In his notes related to this visit, Dr. Beer referenced the appellant's previous L4–5 discectomy and stated that the pain had returned and the MRI revealed a "reherniation."

[¶ 9]   On March 7, 2007, the Division issued a new final determination denying the appellant further benefits related to this injury. The Division denied compensation for medical treatment and wage losses after

February 17, 2007, stating that they were not related to the work incident, but were "due to the pre-existing, underlying degenerative disc disease and prior surgery to the lumbar spine."

[¶ 10] On March 22, 2007, on referral by Dr. Beer, the appellant was seen by Dr. George Girardi for a L3–L4 lumbar epidural steroid injection. Dr. Girardi's notes indicated "a history of low back pain going down his right leg," and his diagnosis was "[l]umbar degenerative disk disease." A month later, the appellant again was seen by Dr. Beer on April 23, 2007. Dr. Beer's notes do not mention the L3–L4 epidural steroid injection, but he does recommend that the appellant receive an L4–L5 facet block injection. The appellant returned to Dr. Girardi on May 11, 2007, for the recommended bilateral L4–L5 facet joint injections. At that time, Dr. Girardi's diagnosis was "[l]ow back pain due to lumbar spondylosis."

[¶ 11] On April 30, 2007, the Division issued a Redetermination reinstating benefits. The Division acknowledged its previous denial of benefits, but stated that it had since received additional information regarding the appellant's case and determined that it could now approve payment of benefits. It is unclear from the record what was the "additional information" referenced by the Division.

[¶ 12] On May 21, 2007, almost five months after the appellant's original injury, the Division requested that the appellant be seen by Dr. Paul Williams in Denver, Colorado, for an independent medical examination (IME). Dr. Williams conducted a physical examination of the appellant and reviewed his medical records. In his report, Dr. Williams noted the appellant's history of an L4–L5 discectomy as well as his current low back and right leg pain as a result of his work activities on January 2, 2007, without neurological deficit. Dr. Williams concluded that although the appellant sustained acute back and right leg pain as a result of his work incident on January 2, 2007, there was no direct causal relationship between the need for a lumbar fusion and the work injury, that no surgery was necessary, and that the Division was not responsible for further treatment related to the incident.

[¶ 13] Based on Dr. Williams' IME, the Division issued a final determination on June 19, 2007, again denying payment for further benefits. The Division determined that as of May 21, 2007 (the date of Dr. Williams' IME), the appellant was considered to be at maximum medical improvement (MMI) for his January 2, 2007, work injury. The appellant objected to this determination and requested a contested case hearing. The matter was referred to the Wyoming Medical Commission and a contested case hearing was scheduled.

[¶ 14] On June 25, 2007, the appellant was again seen by Dr. Beer, this time for a follow-up after the injections given by Dr. Girardi. Dr. Beer reported that the appellant was "not interested in further injections," and "[l]ow back pain, nicely improved after L4–L5 facet block." On July 3, 2007, the appellant was seen by a Casper neurosurgeon, Dr. Debra Steele, for an additional opinion. Dr. Steele found the appellant's muscle strength, reflexes, and sensation were all normal. Dr. Steele concluded that the appellant had a herniated disc with a free fragment at the L4–L5 disc space, and, given the ongoing complaints, she recommended that he undergo a decompression and fusion at that level.

[¶ 15] The contested case hearing was held on April 11, 2008. Both the appellant and the Division presented evidence. The Commission issued its Findings of Fact, Conclusions of Law and Order of Medical Commission Hearing Panel on April 29, 2008. The Commission concluded that the appellant had reached MMI on May 21, 2007, and denied ongoing treatment and further TTD benefits after that date. The appellant appealed that decision and the district court entered an order affirming the Commission's decision on April 30, 2010. The appellant timely appealed the matter to this Court.

## STANDARD OF REVIEW

[¶ 16] Our review of agency actions is governed by the standards set forth

in W.R.A.P. 12.09(a) [1], and the Wyoming Administrative Procedure Act, Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2009) [2]. We review each case as if it came directly from the agency and afford no deference to the district court's decision. *Newman v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2002 WY 91, ¶ 7, 49 P.3d 163, 166 (Wyo.2002). We will not adjust the decision of the agency unless it is "clearly contrary to the overwhelming weight of the evidence on record." *Id.* at ¶ 26, at 173. An evidentiary ruling, such as that presented here, is reviewed under the substantial evidence standard:

> If the hearing examiner determines that the burdened party failed to meet his burden of proof, we will decide whether there is substantial evidence to support the agency's decision to reject the evidence offered by the burdened party by considering whether that conclusion was contrary to the overwhelming weight of the evidence in the record as a whole. *See, Wyo. Consumer Group v. Public Serv. Comm'n of Wyo.*, 882 P.2d 858, 860–61 (Wyo.1994); [*Bd. of Trustees, Laramie County Sch. Dist. No. 1 v.*] *Spiegel*, 549 P.2d [1161,] 1178 [ (Wyo.1976) ] (discussing the definition of substantial evidence as "contrary to the overwhelming weight of the evidence"). If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its

decision will be sustainable under the substantial evidence test. Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did, based on all the evidence before it.

*Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo.2008). "If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal." *Newman*, 2002 WY 91, ¶ 12, 49 P.3d at 168 (quoting *State ex rel. Wyo. Workers' Safety & Comp. Div. v. Jensen*, 2001 WY 51, ¶ 10, 24 P.3d 1133, 1136 (Wyo.2001)). "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions." *Jensen*, 2001 WY 51, ¶ 10, 24 P.3d at 1136. On appeal, it is the appellant's burden to demonstrate that the findings of fact were not supported by substantial evidence. *Anaya v. Holly Sugar Corp.*, 928 P.2d 473, 475 (Wyo.1996).

## DISCUSSION

▮ [¶ 17] It is not disputed that the appellant's January 2, 2007, injury (back pain arising after he jumped down from his truck) was work-related and compensable. The question presented here is whether there is substantial evidence to support the Commission's determination that the appellant was no longer entitled to TTD [3] benefits after

---

1. W.R.A.P. 12.09(a) provides:

   (a) Review shall be conducted by the reviewing court and shall be confined to the record as supplemented pursuant to Rule 12.08 and to the issues set forth in the petition and raised before the agency. Review shall be limited to a determination of the matters specified in Wyo. Stat. 16–3–114(c).

2. Section 16–3–114(c) provides:

   (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

   (i) Compel agency action unlawfully withheld or unreasonably delayed; and
   (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
   (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
   (B) Contrary to constitutional right, power, privilege or immunity;
   (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
   (D) Without observance of procedure required by law; or
   (E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

3. In Wyoming, TTD benefits are one of the primary benefits to which an injured worker may be entitled. TTD benefits are governed by the Wyoming Worker's Compensation Act, particularly

May 21, 2007—the date of the appellant's IME. The appellant claims that there is a "total lack of substantial evidence" to support the Commission's determination that his condition had stabilized on that date such that he should not receive additional TTD benefits. The Commission's findings of fact and conclusions of law were specific and thorough, allowing for adequate review.[4] We will quote from a specific section containing the findings to which the appellant takes exception in this appeal:

> 20. The Panel finds that Watkins has not [met] his burden of proof that his ongoing treatment relates to the work injury in issue. Watkins initially sustained a work injury resulting in surgery at his L4–5 level when he was 15 or 16 years old. The records show ongoing complaints of pain from 1989 to 2000 primarily related to work. These complaints were significant enough for Watkins to seek out medical treatment. On January 2, 2007, Watkins was climbing down off a trailer and jumped or stepped from the tire of the trailer to the ground. He heard or felt a "pop" in his upper lumbar spine. Significantly, this pop was not in the area where he developed low back pain. At the emergency room shortly after the accident he only reported low back pain and no leg pain or radicular symptoms. His examination at that time was completely negative.

Wyo. Stat. Ann. § 27–14–404 (LexisNexis 2009), which section provides in relevant part:

> (a) If after a compensable injury is sustained and as a result of the injury the employee is subject to temporary total disability as defined under W.S. 27–14–102(a)(xviii), the injured employee is entitled to receive a temporary total disability award for the period of temporary total disability as provided by W.S. 27–14–403(c). The period for receiving a temporary total disability award under this section for injuries resulting from any one (1) incident or accident shall not exceed a cumulative period of twenty-four (24) months. . . .
>
> . . . .
>
> (c) Payment under subsection (a) of this section shall cease prior to expiration of the twenty-four (24) month maximum period specified under subsection (a) of this section if:
>
>> (i) Recovery is complete to the extent that the earning power of the employee at a gainful occupation for which he is reasonably suited by experience or training is substantially restored[.]

X–rays only showed minimal degenerative changes and some loss of disc space at the level of his prior surgery. At the time of the MRI he only reported low back pain, again no radicular pain. The MRI showed no nerve impingement or compromise. According to the report of the radiologist, the fragment that Dr. Beer focuses on was not causing any neurologic compromise. Virtually all examinations by Dr. Beer have been normal, including normal strength, sensation, reflexes, and straight leg raising, although straight leg raising has produced inconsistent results. The examination by Dr. Girardi was also normal. The examination by Dr. Williams was also generally normal other than complaints of low back pain. There is no evidence of documented neurologic problem or deficit. In June of 2007, Watkins reported to Dr. Beer that the facet injection provided him excellent relief and he did not require any more treatment. His examination at that time was normal. Watkins' condition was apparently resolved at this point and he did not have any further problems until the next month when he saw Dr. Steele. Again Dr. Steele's neurologic exam was normal. The only consistent findings by any doctor are subjective reports of back pain. No nerve conduction test was ever done to confirm the "suspected" nerve impingement.

Wyo. Stat. Ann. § 27–14–404(a) and (c)(i). We have said that, "[t]he purpose of temporary total disability benefits is 'to provide income for an employee during the time of healing from his injury and until his condition has stabilized.'" *Phillips v. TIC–The Indus. Co. of Wyo., Inc.*, 2005 WY 40, ¶ 27, 109 P.3d 520, 532 (Wyo.2005) (quoting *Pac. Power & Light v. Parsons*, 692 P.2d 226, 228 (Wyo.1984)). However, once the condition has stabilized, and the employee's earning power is substantially restored—regardless of whether the employee actually returns to work—the TTD benefits end. *See Shassetz v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 920 P.2d 1246, 1250–51 (Wyo.1996).

4. "When the resolution of a claim for benefits rests largely, if not exclusively, on an assessment of a claimant's credibility, a hearing examiner's failure to make findings regarding the claimant's credibility on the record renders an effective review of the order denying benefits impossible." *Olivas v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2006 WY 29, ¶ 17, 130 P.3d 476, 486 (Wyo.2006).

21. Watkins' doctors relied heavily on his reported history in arriving at their ultimate opinions. Watkins['] credibility is highly suspect. He was not truthful in his injury report that he had no prior low back injuries. The pop in his low back was not in the area of his pain. He told Drs. Beer and Steele that the pop resulted in immediate pain in that area and that he had the immediate onset of low back pain and radicular symptoms. In the emergency room on January 4, 2007, he only reported low back pain and no radicular symptoms. The radicular complaints did not begin at the time of the injury. The video surveillance also impacts credibility. Watkins is shown running errands, walking normally, engaging in home repair activities, carrying items, bending over often and quite easily, carrying items, [sic] and easily getting into and out of his car without difficulty. He and an unknown person sat on the porch drinking beer and smoking for a long time. He was able to easily bend over and had full range of motion. He moved freely and did not need a chair to help him stand from a sitting position. This is all contrary to his testimony and reports to his doctors. During the hearing that [sic] Watkins was able to sit comfortably for prolonged periods, did not appear in pain, did not change positions, and appeared to be comfortable. Watkins was observed walking with a significant pronounced limp and then walking perfectly normal. He also drove to Casper to see Dr. Steele, which is a long car trip, and again raises questions given testimony that he cannot sit for prolonged periods.

22. The Panel is not persuaded by the opinions of Dr. Beer. First, Dr. Beer relied on Watkins to provide an accurate history and accurate reports of ongoing symptoms and problems. Watkins' history and reports were not truthful. It appears Dr. Beer was not aware of Watkins['] prior ongoing low back symptoms. Dr. Beer also testified that the pop at the time of the work injury was consistent with a herniation. The "pop" in question was much higher than the claimed disc herniation. Dr. Beer believes the leg symptoms started at the time of the "pop" and low back

pain. This is not accurate. Dr. Beer believes there is a nerve impingement from the disc fragment. This is not supported by the MRI report. Likewise, such opinions are contradicted by Dr. Beer's own examinations that show no neurologic compromise. Dr. Beer also did not watch the surveillance video of Watkins and may have witnessed the "limping" that Watkins did during the hearing. Dr. Beer opines that Watkins failed extensive conservative treatment. This is not true. Watkins has never been prescribed anti-inflammatories. He has never been sent to physical therapy. The facet injection provided good relief but was never repeated. No rhizotomy was ever considered. The records appear to indicate that Dr. Beer was recommending surgery almost immediately after the first visit. This impacts Dr. Beer's credibility. Also impacting his credibility is his financial interest in the outcome of the case and the possibility of surgery. For these identical reasons, the opinions of Dr. Steele are suspect and not persuasive.

23. The Panel agrees with Dr. Williams that although Watkins may have sustained some temporary acute exacerbation of a pre-existing low back condition at the time of the accident, his injuries resolved on or about May 27, 2007. Any ongoing treatment is unrelated to the accident in issue. Further, given the facts set forth above, the Panel also agrees with Dr. Williams that Watkins is not a surgical candidate.

[¶ 18] As can be seen from the above-quoted portion of the Commission's findings of fact and conclusions of law, the Commission based its decision that the appellant was not entitled to TTD benefits on Dr. Williams' IME findings and on its own determination that the appellant was not a credible witness. Additionally, the Commission discounted many of Dr. Beer's opinions as they were based largely on the appellant's self-reporting of his symptoms and his pain levels. The appellant asserts that neither Dr. Williams' IME findings nor the credibility determinations are supported by substantial evidence.

### Dr. Williams' IME Report

[¶ 19] The appellant claims that Dr. Williams' findings are unhelpful because he

never opines whether the appellant required further treatment for his injury, but only that "The Division is not responsible for further treatment...." The appellant asserts that this statement does not indicate that his condition had stabilized, but instead that he required further treatment, and that the Division was not responsible to pay for it. Additionally, the appellant asserts that because Dr. Williams did not testify at the hearing, the IME report is nothing more than unsubstantiated and unsupported hearsay and should not have been admitted into evidence. The appellant contends that without Dr. Williams' IME report, the Commission's conclusions are not supported by substantial evidence.

[¶ 20] We disagree with the appellant's characterization of the opinions expressed in Dr. Williams' IME report. In his report, Dr. Williams was responding to specific interrogatives posed him by the Division. Dr. Williams was not asked to opine on the necessity of future treatment for the appellant's back pain generally, but specifically whether lumbar surgery was necessary and whether further treatment related to the work injury was necessary. Based on his review of the medical records and examination of the appellant, Dr. Williams determined that although the appellant sustained work-related "acute back and right leg pain" on January 2, 2007, he could see "no direct causal relationship for the need for a lumbar fusion and the work injury of January 2, 2007." Dr. Williams also opined that the Division should not be "responsible for further treatment related to the incident of January 2, 2007." Given the limited nature of the purpose of his examination, and the appellant's medical history involving back problems and continuing subjective reports of pain, it is not surprising that Dr. Williams did not comment on whether the appellant would, or would not, need additional treatment for unspecified future back problems. While he did not say whether the appellant would require some future treatment, Dr. Williams did, unequivocally, state that the Division was not responsible for further treatment.

[¶ 21] Regarding the appellant's claim that Dr. Williams' report was inadmissible hearsay, we have said: "Admissibility of evidence is committed to the discretion of the hearing examiner. A hearing examiner abuses his discretion when his decision shocks the conscience of the court and appears to be so unfair and inequitable that a reasonable person could not abide it." *Goddard v. Colonel Bozeman's Rest.*, 914 P.2d 1233, 1238 (Wyo.1996) (citations omitted).

[A]dministrative agencies acting in a judicial or quasi judicial capacity are not bound by technical rules of evidence that govern trials by courts or juries, and it is usually held that evidence will not be excluded merely because it is hearsay. Where hearsay evidence is by statute admissible in administrative proceedings, it is often held that it must be probative, trustworthy and credible; and, although it may not be the sole basis for establishing an essential fact and is insufficient to support an administrative decision, it may be considered as corroborative of facts otherwise established.

*Gray v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2008 WY 115, ¶ 18, 193 P.3d 246, 252 (Wyo.2008) (quoting *Story v. Wyo. State Bd. of Med. Exam'rs*, 721 P.2d 1013, 1018 (Wyo.1986)) (citations omitted).

[¶ 22] Given the relaxed status of the rules of evidence in administrative proceedings, we find that the Commission did not abuse its discretion in admitting the IME report into evidence. In doing so, we note that the appellant did not object to the admission of Dr. Williams' IME report at the contested case hearing; therefore, this issue is raised for the first time in this appeal. It is well established that issues not raised in an administrative action may not be considered for the first time on appeal.

We have recognized in more than a few decisions, and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts.

*Wyo. Bancorporation v. Bonham*, 527 P.2d 432, 439 (Wyo.1974) (quoting *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33,

36–37, 73 S.Ct. 67, 68–69, 97 L.Ed. 54 (1952)); *see also* W.R.A.P. 12.09(a) ("Review shall be conducted by the reviewing court and shall be confined to the record as supplemented pursuant to Rule 12.08 and to the issues set forth in the petition and raised before the agency.").

### The Commission's Credibility Determinations

[¶ 23] In addition to its conclusion that the IME report and the opinions of Dr. Williams were probative and credible, the Commission also based its decision on its finding that appellant was not credible.

> The hearing examiner, as the trier of fact, is responsible for determining relevancy, assigning probative value and ascribing the relevant weight given to medical testimony. *Matter of Worker's Compensation Claim of Thornberg*, 913 P.2d 863, 867 (Wyo.1996). Ambiguities in evidence trigger the process of weighing the evidence and assessing the credibility of the witness. *Latimer v. Rissler & McMurry Co.*, 902 P.2d 706, 711 (Wyo.1995). As we have previously stated:
>
>> The fact finder was left with weighing these opinions, and to do so he had to consider (1) the opinion, (2) the reasons, if any, given for it, (3) the strength of it, and (4) the qualifications and credibility of the witness[es] expressing it.
>
> *Thornberg*, 913 P.2d at 868. *Accord Matter of Krause*, 803 P.2d 81, 83 (Wyo.1990); *Rice v. State*, 500 P.2d 675, 676 (Wyo.1972).

*Clark v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 934 P.2d 1269, 1271 (Wyo.1997). "Credibility determinations are the unique province of the hearing examiner, and we eschew re-weighing those conclusions." *Hamilton v. State ex rel. Wyo. Workers'*

*Safety & Comp. Div.*, 2001 WY 20, ¶ 11, 18 P.3d 637, 640 (Wyo.2001). "We defer to the agency's determination of witness credibility unless it is clearly contrary to the overwhelming weight of the evidence." *Glaze v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 102, ¶ 29, 214 P.3d 228, 235 (Wyo.2009). "If, in the course of its decision making process, the agency disregards certain evidence and explains its reasons for doing so based upon determinations of credibility or other factors contained in the record, its decision will be sustainable under the substantial evidence test." *Dale*, 2008 WY 84, ¶ 22, 188 P.3d at 561; *see also Chavez v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 46, ¶ 18, 204 P.3d 967, 971 (Wyo.2009).

[¶ 24] Given the subjective nature of the appellant's physical ailments and the dearth of medical evidence connecting his continuing reported pain to his work injury, the appellant's credibility was a vital component to his case.[5] The above-quoted portion of the Commission's conclusions show specific findings regarding the appellant's credibility and detailed reasoning supporting its credibility determinations. *See supra* ¶ 17. We do not find the Commission's conclusion regarding the appellant's credibility to be clearly contrary to the overwhelming weight of the evidence. To the contrary, the record reveals that the appellant was less than forthright in his providing accurate medical information and that his behavior was inconsistent with the symptoms he was reporting to his doctors. Therefore, we must defer to the Commission's credibility determination as it is not "against the great weight of the evidence."

[¶ 25] The Commission also stated that it was "not persuaded by the opinions of Dr. Beer." We have said, "a hearing examin-

---

5. We note, as we did in *Tarraferro v. State ex rel. Wyoming Medical Commission*, 2005 WY 155, 123 P.3d 912 (Wyo.2005), the difficulty confronted when determining matters based on a claimant's subjective reports of pain:

> Of course, one of the limitations of medical science is that the body's five classic senses cannot provide any information to a diagnostician: "The examiner cannot see the pain, hear the pain, touch the pain, taste the pain, or smell the pain. Worse yet, though in an age of medical miracles, we cannot X–ray the pain, measure it like serum levels of hemoglobin or sodium, plot it on graph paper like an EEG, or cut it out like a tumor. There are no measuring devices like voltmeters to tell us whether a patient is experiencing mild, moderate, or severe pain. In short, there is no objective direct tangible physical evidence for pain itself." 6B *Lawyers' Medical Cyclopedia of Personal Injuries and Allied Specialties*, § 44A.1, at 251 (LEXIS Publishing 2000).

*Id.* at ¶ 5, at 914 n. 1.

er is entitled to disregard an expert opinion if he finds the opinion unreasonable, not adequately supported by the facts upon which the opinion is based, or based upon an incomplete and inaccurate medical history provided by the claimant." *Taylor v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2005 WY 148, ¶ 15, 123 P.3d 143, 148 (Wyo.2005). Not only did the Commission discount many of Dr. Beer's conclusions as they were based on his reliance on the appellant's subjective reports, but it also specifically found many of Dr. Beer's opinions to be inconsistent with the medical evidence. *See supra* ¶ 17. Determining whether a claimant is entitled to benefits where, as here, there exists conflicting medical testimony is precisely the purpose for which the Medical Commission was created. *French v. Amax Coal West*, 960 P.2d 1023, 1030 (Wyo.1998) ("The creation of the Medical Commission reflects the legislature's recognition that many contested claims involve complex medical issues, and in some cases, those issues are dispositive. Thus, each medical hearing panel will have at least one physician, and all will be health care providers, with the expertise to determine the medical issues before them.") As has been said, our task is not to re-weigh the evidence presented to the Commission but only to determine if substantial evidence exists to support its conclusion. Upon reviewing the record before us, we find that there is substantial evidence to support the Commission's conclusion regarding the credibility and weight given to Dr. Beer's opinions and testimony.

## CONCLUSION

[¶ 26]  We find that the Commission's determination that the appellant did not meet his burden of proving he was entitled to further TTD benefits was supported by substantial evidence. The IME report of Dr. Williams was properly admitted and his conclusions supported the Commission's decision. Also, the Commission's finding that the appellant lacked credibility was not contrary to the overwhelming weight of the evidence. Likewise, substantial evidence supported the Commission's discounting of Dr. Beer's opinions, which opinions were derived largely from the appellant's subjective reports, and were, at times, inconsistent with the medical evidence. Therefore, based on the facts presented, we find that the Commission could have reasonably concluded as it did.

[¶ 27]  Affirmed.

HILL, Justice, dissenting.

[¶ 28]  I dissent because my close reading of the record on appeal establishes that the Medical Commission and the Division committed many of the same errors we have pointed out to them, in more than a dozen cases in the last several years. See *Camilleri v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 156, ¶ 31, 244 P.3d 52, 62–63 (Wyo.2010) (citing *Judd v. State ex rel. Wyo. Workers' Safety & Comp. Div. (Medical Commission)*, 2010 WY 85, ¶¶ 36–40, 233 P.3d 956, 970–71 (Wyo.2010); *In re Worker's Comp. Claim of Glaze v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 102, ¶¶ 27–30, 214 P.3d 228, 235 (Wyo.2009); *In re Worker's Comp. Claim v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2009 WY 66, ¶¶ 16–18, 208 P.3d 41, 48 (Wyo.2009); *Decker v. State ex rel. Wyo. Med. Comm'n*, 2008 WY 100, ¶¶ 30–36, 191 P.3d 105, 121–22 (Wyo. 2008); *Nagle v. State ex rel. Wyo. Worker's Safety & Comp. Div. (In re Worker's Comp. Claim of Nagle)*, 2008 WY 99, ¶¶ 13–39, 190 P.3d 159, 166–74 (Wyo.2008); *Walton v. State ex rel. Wyo. Workers' Safety & Comp. Div. (Medical Commission)*, 2007 WY 46, ¶ 39, 153 P.3d 932, 941 (Wyo.2007); *Rodgers v. State ex rel. Wyo. Workers' Safety & Comp. Div. (Medical Commission)*, 2006 WY 65, ¶ 53, 135 P.3d 568, 585 (Wyo.2006); *Decker v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 160, 124 P.3d 686, ¶¶ 38–42, 124 P.3d 686, 698–99 (Wyo.2005); *Tarraferro v. State ex rel. Wyo. Med. Comm'n*, 2005 WY 155, ¶¶ 18–21, 123 P.3d 912, 920 (Wyo.2005); *Vaughan v. State ex rel. Wyo. Workers' Comp. Div. (Medical Commission)*, 2002 WY 131, ¶¶ 33–36, 53 P.3d 559, 567 (Wyo.2002); *Keck v. State ex rel. Workers' Safety & Comp. Div.*, 985 P.2d 430, 433 (Wyo.1999)).

[¶ 29]  The Division's video surveillance evidence in this case served to strengthen Watkins' case, and weaken that presented by

**1092**

the Division. The only significant evidence that supported the Medical Commission's ultimate findings was an IME done by an expert witness imported from Oregon to Colorado (he was not licensed in Wyoming, so Watkins went to Denver for the IME). The record reflects that the Division appeared to know the outcome of the IME, even before it was done. An internal memorandum that was probably inadvertently left in the file that reached this Court revealed:

> Above trans is a letter from his [Watkins'] attorney. I did the redetermination and the resp date for the employer is not till 5/15. His appt with Dr. Williams in Denver is 5/21. The IME is very important as he has not yet had surgery. Can we pay him in advance for the travel so he [Watkins] pretty much has to go? The employer is trying to decide if he wants to object, so I really don't want to release any TTD before he has a chance to object. Any suggestions?

[¶ 30] The Medical Commission also found all of Watkins' physicians not to be credible on the basis that they had a financial interest in treating Watkins. My sense is just the opposite; the only physician (compensated expert witness only, no treatment goal) with what amounted to a financial stake in this case was the physician who produced an IME that was tailored to the Division's needs.

[¶ 31] I conclude that when this Court deletes from consideration what amounts to idle speculation on the part of the hearing panel, as well as inaccurate, incomplete and/or insubstantial findings, the denial of benefits in this case cannot stand. For these reasons I would reverse the order of the district court affirming the Medical Commission's order, and remand the case to the district court with further directions that it be remanded to the Medical Commission for the purpose of it directing the Division to award Watkins any and all medical benefits and disability awards that are due him for the work-related injury that occurred on January 2, 2007.